**STATE of Minnesota, Respondent,**

v.

**Mark PIERCE, Appellant.**

**No. C1–83–1415.**

Court of Appeals of Minnesota.

May 1, 1984.

Hubert H. Humphrey, III, Atty. Gen., Paul Kempainen, Sp. Asst. Atty. Gen., St. Paul, for respondent.

C. Paul Jones, Minn. State Public Defender, Kathy King, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

Appellant seeks review of constitutional search, seizure and confession issues decided at an omnibus hearing. The evidence was ruled admissible, and the case was tried on stipulated facts without a jury,

resulting in convictions of carrying a pistol without a permit, theft and criminal damage to property. Appellant contends that his car was searched without probable cause and that his confession should have been suppressed because he was incarcerated too long before being brought before a magistrate. We affirm the convictions.

## ISSUES

1. Was the confession the product of unreasonable delay in presenting appellant before a magistrate?

2. Did the sheriff's deputy and the investigator have probable cause for the search of appellant's automobile?

## FACTS

The offenses of which appellant, Mark Pierce, was convicted occurred on three separate dates. The first was during the night of February 14–15, 1983, when he stole various items from a logging site.

The second occurred on the night of February 26–27, 1983, when Pierce repeatedly shot into the same logging camp and damaged over $10,000 worth of equipment with a .22 caliber pistol.

The third offense came to light on March 1, 1983, when appellant's car was stopped because of excessive muffler noise. When the sheriff's deputy stopped appellant, he smelled a strong odor of alcohol and beer coming from inside the car as appellant got out of his car. Through the car window, the deputy saw an open case of beer on the back seat with some cans missing and a metal opener tab from a can lying on the floor of the passenger side of the vehicle. He then opened the car door and saw a drinking glass on the floor. There was no opened can in sight.

The deputy knew the appellant was on probation and was not supposed to be drinking or to have beer in his possession. He concluded that there was probable cause to suspect an open bottle violation and examined the areas of the car where possession of an open bottle would be prohibited. He opened the glove compartment and observed a .22 caliber automatic pistol and a fully loaded clip of shells. Appellant was then charged with possessing a handgun without a permit and the deputy called his office investigator to the scene.

When the investigator arrived at the scene, he noticed that the gas cap on appellant's car was missing. He also noticed CCI brand .22 shells in the car and became suspicious that appellant had committed the theft and vandalism at the logging camp because he knew that the same brand of .22 shells had been used, and that a gas cap had been found at the scene.

The investigator then obtained a search warrant. Various items were removed from the car, which were later identified as being the items stolen from the logging site.

After the searches, appellant was charged with theft and criminal damage to property and was taken to jail. The deputy then informed him of his *Miranda* rights and began to question him. Appellant said that he did not want to talk until he had seen a lawyer and the questioning stopped.

While awaiting the availability of a judge, Pierce's father and brother visited him in the jail. Prior to their seeing him, the investigating officer talked with the father, whom he had known for 25 years, and mentioned to him that "[the police] had what [he] considered a great amount of evidence indicating that [appellant] was involved" in these crimes "and it would be better for [him] if he were to get it off his chest." He also said if appellant "talked" that "it wouldn't hurt him." It is unclear from the record whether this conversation took place on March 1 or 2.

On the evening of March 2, at around 10:30 p.m., the investigator received a call at his home with a message that the appellant wanted to talk with him. This was about 26 hours after he was arrested. The investigator waited until 10:30 a.m. the next morning to talk with appellant. After again informing appellant of his *Miranda* rights, he received a full confession approximately 34½ hours after the arrest, not counting the day of arrest. Appellant was arraigned some time on March 4, 1983.

The omnibus court held that both the confession and the searches of the car were admissible over any constitutional objections. Appellant then agreed to waive his right to a jury trial and submit the case on stipulated facts for purposes of appeal. Pierce was found guilty as charged of all three crimes.

## DISCUSSION

### I

■ Appellant contends that his voluntary confession should be suppressed because (a) it was the product of an unreasonable delay in presenting him before a magistrate, and (b) it was the product of a failure by the police to scrupulously honor his previously asserted desire to remain silent.

(a) Rule 4.02, subd. 5, Minn.R.Crim.P., provides:

> If an arrested person is not released pursuant to this rule or Rule 6, he shall be brought before the nearest available judge of the county court of the county where the alleged offense occurred or judicial officer of such court or judge of a municipal court in such county. He shall be brought before such judge or judicial officer without unnecessary delay, and in any event, not more than 36 hours after the arrest, exclusive of the day of arrest, Sundays, and legal holidays, or as soon thereafter as such judge or judicial officer is available. Provided, however, in misdemeanor cases, if the defendant is not brought before a judge or judicial officer within the 36-hour limit, he shall be released upon citation as provided in Rule 6.01, subd. 1.

At the omnibus hearing, the investigator testified that appellant was not arraigned sooner because the county attorney had told him that the judge "wasn't around." Under the circumstances, the unavailability of the judge should have been confirmed by firsthand knowledge of the sheriff. Duluth is only 26 miles away from where he was being held. Though the local judge may have been unavailable, with a major municipality that near, he should have been taken before a magistrate.

■ In *State v. Wiberg*, 296 N.W.2d 388 (Minn.1980), our Supreme Court found a violation of the prompt arraignment rule, even though 36 hours had not yet elapsed (exclusive of the day of arrest). The sanction of exclusion is determined on a case-by-case basis. The Court in *Wiberg* directed the factors to be considered:

1. how reliable is the evidence;
2. whether the delay was intentional;
3. whether the delay compounded the effects of other police misconduct; and
4. the length of the delay.

*Id.* at 393.

Under these standards, it is apparent that the omnibus court was correct in ruling the confession admissible because:

1. the confession itself was reliable and corroborated by other evidence procured independently by the police;
2. the delay was not intentional;
3. there was no other police misconduct to be compounded by the delay; and
4. only some 26 hours had elapsed since the arrest when appellant sent for the investigator.

Under *Wiberg*, appellant's confession was not the product of any unreasonable delay, and the circumstances do not call for the sanction of excluding otherwise probative evidence.

■ (b) Appellant's second contention, that the confession was the product of a failure by the police to honor his previously asserted desire to remain silent, is neither supported by the facts nor by case law.

Only after appellant himself had contacted the jail authorities saying that he wanted to talk, was he questioned by the investigator. Before questioning him, however, the investigator made sure that appellant knew and understood his *Miranda* rights and that he voluntarily waived those rights.

■ Appellant also claims that the statement made by the investigator to appellant's father was the "functional equivalent" of interrogating him personally. The conversation must be viewed in the context

of a 25-year acquaintanceship between the investigator and the father. It is not the "functional equivalent" of interrogation which the Supreme Court described in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). There, the defendant was being transported to jail after having said he wished to see an attorney before answering any questions. The custodial officers said, in his presence but "between themselves", "God forbid one of [the neighborhood children] might find a weapon with shells and they might hurt themselves." The defendant then interrupted and offered to show them where the gun was located. Even in the face of this rather disingenuous technique, the United States Supreme Court held it not to be "words or actions that the police should have known were reasonably likely to elicit an incriminating response from [a suspect who has said he wishes to see an attorney]." *Id.* at 303, 100 S.Ct. at 1690.

Here, there was not even the direct communication with the person in custody that was present in *Innis;* it is difficult to see how this third party conversation could be considered interrogation, "functional equivalent" or otherwise.

**II**

The second issue is whether the evidence seized from appellant's car was obtained in a constitutionally permissible manner. The record supports the omnibus court's conclusion that the searches of appellant's car conducted by the arresting officer and the investigator were lawful, and that therefore the fruits of those searches were admissible.

 The initial stop of appellant for a noisy muffler was proper. *City of St. Paul v. Myles*, 298 Minn. 298, 218 N.W.2d 697 (1974). In the course of conducting this legal stop, the deputy recognized the appellant and knew him to be on probation. He knew also that Pierce was not supposed to be drinking or to be in possession of beer. The deputy noticed the smell of beer or alcohol coming from the car as appellant got out. He also noticed an open case of beer in the car with cans missing and a metal can tab on the floor. This constitut-

ed separate probable cause, allowing the deputy to search the car for evidence of an "open bottle" violation under the automobile exception to the warrant requirement. Minn.Stat. § 169.122 (1982). *See State v. Liljedahl*, 327 N.W.2d 27, 30 (Minn.1982); *State v. Willis*, 320 N.W.2d 726, 728 (Minn. 1982). It has long been held that the detection of odors alone, which trained police officers can identify as being illicit, constitutes probable cause to search automobiles for further evidence of crime. *City of St. Paul v. Moody*, 309 Minn. 104, 244 N.W.2d 43 (Minn.1976); *State v. Wicklund*, 295 Minn. 403, 205 N.W.2d 509 (Minn.1973).

 Once the deputy was inside the appellant's car searching for evidence of open bottles, he was entitled to look inside the glove compartment as this is a natural and obvious place to secrete an open bottle as police officers approach a stopped vehicle; it is also a *prohibited* place under the "open bottle" statute. Minn.Stat. § 169.-122, subd. 3, provides:

> It shall be unlawful for the owner of any private motor vehicle or the driver, if the owner be not then present in the motor vehicle, to keep or allow to be kept in a motor vehicle when such vehicle is upon the public highway any bottle or receptacle containing intoxicating liquors or nonintoxicating malt liquors which has been opened, or the seal broken, or the contents of which have been partially removed except when such bottle or receptacle shall be kept in the trunk of the motor vehicle when such vehicle is equipped with a trunk, or kept in some other area of the vehicle not normally occupied by the driver or passengers, if the motor vehicle is not equipped with a trunk. *A utility compartment or glove compartment shall be deemed to be within the area occupied by the driver and passengers.*

(Emphasis added).

 Because the deputy's search of the glove compartment was lawful, his plain view discovery there of the .22 caliber pistol was also lawful. The other evidence subsequently found in the car as a result of the investigator's search pursuant to war-

rant was seized in a lawful manner and was therefore legally admissible into evidence.

## DECISION

We hold that appellant's confession and the items seized as evidence from appellant's automobile were lawfully obtained and admissible into evidence.

Affirmed.