**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-0385**

State of Minnesota,
Appellant,

vs.

Raenard Romalle Douglas,
Respondent.

**Filed September 23, 2024
Reversed and remanded
Johnson, Judge
Dissenting, Ross, Judge**

Scott County District Court
File No. 70-CR-19-18076

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for appellant)

Anders J. Erickson, Johnson Erickson Criminal Defense, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Kirk, Judge.*

**SYLLABUS**

Before the supreme court's opinion in *State v. Torgerson*, 995 N.W.2d 164 (Minn. 2023), this court's caselaw authorized a law-enforcement officer to conduct a warrantless search of a vehicle based solely on the odor of marijuana emanating from the vehicle, so

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

long as the officer had probable cause to believe that more than 1.4 grams of marijuana was in the vehicle. Evidence obtained in such a search conducted before *Torgerson* need not be suppressed pursuant to the exclusionary rule because, at that time, a well-trained law-enforcement officer would have acted in objectively reasonable reliance on binding appellate precedent.

## OPINION

**JOHNSON**, Judge

Raenard Romalle Douglas was charged with unlawful possession of ammunition by an ineligible person and driving after cancellation as inimical to public safety. He moved to suppress evidence of the ammunition and to dismiss the ammunition-possession charge on the ground that a police officer found the ammunition in a warrantless search of a vehicle that was not supported by probable cause. The district court granted Douglas's motion and dismissed the ammunition-possession charge. We conclude that the district court erred by not applying the *Lindquist* exception to the exclusionary rule because, in October 2019, a well-trained law-enforcement officer would have had an objectively reasonable belief, based on binding appellate precedent, that the odor of marijuana alone established probable cause for a warrantless search of a vehicle pursuant to the automobile exception to the warrant requirement. Therefore, we reverse and remand.

## FACTS

Late at night on October 27, 2019, a City of Savage police officer stopped a vehicle because it did not have a front license plate and had an object hanging from the rear-view mirror. After approaching the driver's window, the officer smelled the odor of burnt

2

marijuana emanating from the vehicle. The driver, Douglas, identified himself. The officer learned that Douglas's driver's license was canceled because his driving had been deemed inimical to public safety. The officer asked Douglas and a passenger to step out of the vehicle so that it could be searched. During the search, the officer found several burnt marijuana roaches throughout the vehicle and a safe in the back seat, which the officer suspected to contain drug packaging. Douglas told the officer that he did not know the combination of the safe's lock. The officer pried open the safe and found ammunition but no drugs or drug packaging.

The state charged Douglas with unlawful possession of ammunition by an ineligible person, in violation of Minn. Stat. § 624.713, subd. 2(b) (2018), and driving after cancellation as inimical to public safety, in violation of Minn. Stat. § 171.24, subd. 5 (2018). The case was tried in November 2021, with the result being a hung jury. A new trial was scheduled for March of 2022 but was continued numerous times due to the unavailability of witnesses, a failure to appear by Douglas, a substitution of counsel, and possibly other reasons that are not apparent from the record.

In September 2023, the supreme court released its opinion in *State v. Torgerson*, 995 N.W.2d 164 (Minn. 2023), in which it held that "the odor of marijuana emanating from a vehicle, alone, is insufficient to create the requisite probable cause to search a vehicle under the automobile exception to the warrant requirement." *Id.* at 166. The supreme court explained that "the probable cause analysis calls for the odor of marijuana to be one of the circumstances considered as part of the totality of the circumstances in assessing whether

3

there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 173 (emphasis omitted).

In November 2023, Douglas moved to suppress evidence of the ammunition and to dismiss the ammunition-possession charge. At an evidentiary hearing in December 2023, the officer who stopped and searched the vehicle driven by Douglas testified that he searched the vehicle for only one reason: the odor of burnt marijuana. In a post-hearing memorandum, Douglas argued that, in light of *Torgerson*, the officer did not have probable cause to search the vehicle. In response, the state argued that evidence of the ammunition should not be suppressed because of the exception to the exclusionary rule for an officer's objectively reasonable reliance on binding appellate precedent. *See State v. Lindquist*, 869 N.W.2d 863 (Minn. 2015). The district court rejected the state's argument, granted Douglas's motion, suppressed evidence of the ammunition, and dismissed the ammunition-possession charge. The state appeals.

## ISSUE

Did the district court err by not applying the *Lindquist* exception to the exclusionary rule for a law-enforcement officer's objectively reasonable reliance on binding appellate precedent?

## ANALYSIS

The state argues that the district court erred by granting Douglas's motion to suppress and to dismiss. Specifically, the state argues that, when the Savage police officer searched the vehicle driven by Douglas in October 2019—approximately four years before the supreme court issued its *Torgerson* opinion—the officer would have had an objectively

4

reasonable belief, based on binding appellate precedent, that the odor of marijuana emanating from a vehicle, by itself, established probable cause for a warrantless search of the vehicle pursuant to the automobile exception to the warrant requirement.

We begin by noting that, as a general matter, the state may obtain appellate review of a pre-trial order only if the order, if not reversed, would have a "critical impact on the outcome of the trial." *State v. Lugo*, 887 N.W.2d 476, 481 (Minn. 2016) (quotation omitted); *see also* Minn. R. Crim. P. 28.04, subds. 1(1), 2(2)(b). A challenged ruling has a critical impact if it "'completely destroys' the state's case" or "'significantly reduces the likelihood of a successful prosecution.'" *State v. McLeod*, 705 N.W.2d 776, 784 (Minn. 2005) (quoting *State v. Joon Kyu Kim*, 398 N.W.2d 544, 551 (Minn. 1987)). In this case, the state contends that the dismissal of the ammunition-possession charge would have a critical impact on the state's case. Douglas does not disagree. We agree with the state that the critical-impact requirement is satisfied. Thus, the state may proceed with its appeal.

**A.**

The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Minnesota Constitution contains substantially the same language. *See* Minn. Const. art. I, § 10.

A search conducted without a warrant generally is presumed to be unreasonable and, thus, a violation of the Fourth Amendment. *Kentucky v. King*, 563 U.S. 452, 459 (2011);

5

*State v. Edstrom*, 916 N.W.2d 512, 517 (Minn. 2018). But a warrantless search may be deemed reasonable if there is a recognized exception to the Fourth Amendment's warrant requirement. *Missouri v. McNeely*, 569 U.S. 141, 148-49 (2013); *State v. Rohde*, 852 N.W.2d 260, 263 (Minn. 2014); *State v. Milton*, 821 N.W.2d 789, 798-99 (Minn. 2012); *State v. Licari*, 659 N.W.2d 243, 250 (Minn. 2003). Certain exceptions exist because "the ultimate touchstone of the Fourth Amendment is reasonableness." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quotation omitted).

One exception to the warrant requirement is the automobile exception. Under that exception, "police may search a car without a warrant, including closed containers in that car, if there is probable cause to believe the search will result in a discovery of evidence or contraband." *State v. Barrow*, 989 N.W.2d 682, 685 (Minn. 2023) (quotation omitted). The underlying rationale of the automobile exception is that, if there is probable cause to believe that contraband may be found in a vehicle, it frequently is "not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll v. United States*, 267 U.S. 132, 153 (1925).

As stated above, the supreme court recently held that the odor of marijuana, by itself, is insufficient to establish probable cause for a warrantless search of a motor vehicle pursuant to the automobile exception. *Torgerson*, 995 N.W.2d at 170-74. Rather, "the odor of marijuana should be considered along with the totality of any other circumstances

6

to determine whether there is a fair probability that a search will yield contraband or other evidence that marijuana is being used in a criminally illegal manner." *Id.* at 173.[1]

**B.**

Under federal law, if a law-enforcement officer conducts a warrantless search in violation of the Fourth Amendment, the evidence obtained in the search generally may not be introduced at trial. *United States v. Calandra*, 414 U.S. 338, 348 (1974); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Weeks v. United States*, 232 U.S. 383, 392 (1914). But the United States Supreme Court "has consistently restricted application of the exclusionary rule to 'those areas where its remedial objectives are thought most efficaciously served.'" *State v. Lindquist*, 869 N.W.2d 863, 868 (Minn. 2015) (quoting *Calandra*, 414 U.S. at 348, and citing *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). Specifically, the Court "has declined to apply the Fourth Amendment exclusionary rule in circumstances in which

---

[1] The supreme court explained that the phrase "criminally illegal manner" meant, "at the time of the search" in that case, "more than a small amount of marijuana, that is not hemp, and is not being used under the medical cannabis registry program." *Torgerson*, 995 N.W.2d at 173. Since the date of the search in *Torgerson*, which occurred in July 2021, the legislature and the governor have enacted a new statute, effective August 1, 2023, which makes it a crime for a person to possess any form of cannabis in any amount while "in a private motor vehicle on a street or highway," unless the cannabis is in its sealed commercial packaging or in the vehicle's trunk or "another area of the vehicle not normally occupied by the driver and passengers." *See* 2023 Minn. Laws ch. 63, art. 4, § 30, at 2836-37 (codified at Minn. Stat. § 169A.36, subds. 3, 6(b) (Supp. 2023)). This statute presumably changes the meaning of "criminally illegal manner" with respect to searches performed on or after August 1, 2023. In addition, another new statute, effective August 1, 2024, provides, "A peace officer's perception of the odor of cannabis shall not serve as the sole basis to search a motor vehicle, or to search the driver, passengers, or any of the contents of a motor vehicle." *See* 2024 Minn. Laws ch. 123, art. 3, § 5, at 1783 (to be codified at Minn. Stat. § 626.223 (2024)); *see also* Minn. Stat. § 645.02 (2022) (specifying default effective date of August 1 following enactment).

doing so would not serve the central purpose of deterring police misconduct." *Id.* (citing *Elkins v. United States*, 364 U.S. 206, 217 (1960), and *Arizona v. Evans*, 514 U.S. 1, 14 (1995)).

Accordingly, the Court "has limited the applicability of the exclusionary rule . . . through a series of good-faith exceptions." *Id.* at 869. For example, in *United States v. Leon*, 468 U.S. 897 (1984), the Court held that the exclusionary rule does not apply if a police officer conducts a search in reasonable reliance on a facially valid warrant that is later determined to be invalid for lack of probable cause. *Id.* at 905-25. The Court reasoned that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922. Similarly, the Court has held that the exclusionary rule does not apply to an officer's good-faith reliance on a statute that later is determined to be unconstitutional, *Illinois v. Krull*, 480 U.S. 340, 347-55 (1987), or an arrest-warrant database that later is determined to be inaccurate, *Herring v. United States*, 555 U.S. 135, 139-48 (2009).

The Court also has held that the exclusionary rule does not apply to evidence obtained in a search that was conducted "in reliance on binding appellate precedent." *Davis v. United States*, 564 U.S. 229, 241 (2011). The Court reasoned in *Davis* that "the harsh sanction of exclusion" should apply only in situations in which it would "yield meaningful deterrence" and only if an officer's conduct is "culpable enough to be worth the price paid by the justice system" but not if evidence is "obtained as a result of nonculpable, innocent police conduct." *Id.* at 240 (quotations omitted). The Court reasoned further:

8

> Responsible law enforcement officers will take care to learn what is required of them under Fourth Amendment precedent and will conform their conduct to these rules. But by the same token, when binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances. The deterrent effect of exclusion in such a case can only be to discourage the officer from doing his duty.

*Id.* at 241 (emphasis and quotations omitted).

The Minnesota Supreme Court generally has *not* recognized the categorical exceptions to the exclusionary rule that have been recognized by the United States Supreme Court, though it has declined to apply the exclusionary rule in particular cases. *See Lindquist*, 869 N.W.2d at 870-71. In *Lindquist*, however, the supreme court adopted the *Davis* exception for situations in which "law enforcement acts in objectively reasonable reliance on binding appellate precedent." *Id.* at 876. The supreme court reasoned that "deterrence of police misconduct" is "the central purpose of the exclusionary rule" and that "applying the exclusionary rule to evidence obtained during a search conducted in reasonable reliance on binding appellate precedent would have no deterrent value on police misconduct." *Id.* at 871. The supreme court also reasoned, "When the law changes after a search such that the search now violates the Fourth Amendment to the U.S. Constitution or Article I, Section 10 of the Minnesota Constitution, any error rests with judges and not the police." *Id.* The supreme court further reasoned, "'Excluding evidence in such cases deters no police misconduct and imposes substantial social costs.'" *Id.* (quoting *Davis*, 564 U.S. at 249).

Accordingly, the supreme court held in *Lindquist* that "the exclusionary rule does not apply to violations of the Fourth Amendment to the U.S. Constitution, or Article I, Section 10, of the Minnesota Constitution when law enforcement acts in objectively reasonable reliance on binding appellate precedent." *Id.* at 876. The supreme court explained that "'objectively reasonable reliance'" is determined by "'the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal,'" regardless of the officer's subjective belief. *Id.* at 878 (quoting *Leon*, 468 U.S. at 922 n.23). The supreme court emphasized that the exception "applies only when law enforcement officers act pursuant to binding appellate precedent, not persuasive precedent from other jurisdictions," that "the binding precedent must specifically authorize" the officer's search, and that the exception does not apply to searches for which "no precedent exists or the law is unsettled." *Id.* at 876-77; *see also State v. Leonard*, 943 N.W.2d 149, 161 (Minn. 2020) (holding that *Lindquist* exception did not apply "[b]ecause no binding appellate precedent authorizes a suspicionless search of a [hotel's] guest registry").

## C.

In this case, the state argues that the *Lindquist* exception to the exclusionary rule applies. The state contends that, when the Savage police officer searched the vehicle driven by Douglas in October 2019—approximately four years before the supreme court issued its *Torgerson* opinion—the officer would have relied in an objectively reasonable manner on binding appellate precedent providing that the odor of marijuana emanating from a

vehicle, by itself, established probable cause for a search of the vehicle pursuant to the automobile exception to the warrant requirement.[2]

In determining whether binding appellate precedent specifically authorized a search of the vehicle driven by Douglas in October 2019, we are somewhat constrained by the *Torgerson* opinion. In that opinion, the supreme court stated that "we have never held that the odor of marijuana (or any other substance), alone, is sufficient to create the requisite probable cause to search a vehicle." 995 N.W.2d at 173. Accordingly, we take as given that, in October 2019, the supreme court's caselaw did not allow an objectively reasonable belief that the odor of marijuana emanating from a vehicle, by itself, established probable cause for a search of the vehicle pursuant to the automobile exception.

The state acknowledges the supreme court's description of its own pre-*Torgerson* caselaw. But the state contends that, in October 2019, binding appellate precedent of *this court* allowed an officer to have an objectively reasonable belief that the odor of marijuana emanating from a vehicle, by itself, established probable cause for a search of a vehicle. Indeed, this court is authorized by a rule of appellate procedure to issue "precedential" opinions. *See* Minn. R. Civ. App. P. 136.01, subd. 1. Opinions of this court that are designated "precedential" (or, in the past, "published") are "binding on this court and on the district courts." *State v. Chauvin*, 955 N.W.2d 684, 689 & n.2 (Minn. App. 2021), *rev.*

---

[2]In *Torgerson*, the state urged the supreme court to apply the *Lindquist* exception, but the supreme court deemed the argument to have been forfeited because the state did not present the argument to the district court or to this court. 995 N.W.2d at 168 n.3. There is no dispute in this case that the state preserved its *Lindquist* argument by presenting it to the district court.

11

*denied* (Minn. Mar. 10, 2021); *see also State v. Peter*, 825 N.W.2d 126, 129 (Minn. App. 2012), *rev. denied* (Minn. Feb. 27, 2013); *State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *rev. denied* (Minn. Sept. 21, 2010). In applying the *Davis* exception, the federal intermediate appellate courts have sought to determine whether their own precedential opinions authorized warrantless searches that later were determined to be unreasonable. *See, e.g.*, *United States v. Campbell*, 26 F.4th 860, 883-87 (11th Cir. 2022) (*en banc*); *United States v. Barraza-Maldonado*, 732 F.3d 865, 867-69 (8th Cir. 2013); *United States v. Sparks*, 711 F.3d 58, 63-67 (1st Cir. 2013). Accordingly, we will review this court's pre-*Torgerson* caselaw to determine whether, in October 2019, binding appellate precedent specifically authorized the officer's search of the vehicle driven by Douglas.

**D.**

The state cites four precedential opinions of this court. The most applicable of the four opinions is *State v. Pierce*, 347 N.W.2d 829 (Minn. App. 1984). In that opinion, we stated, "It has long been held that the detection of *odors alone*, which trained police officers can identify as being illicit, constitutes probable cause to search automobiles for further evidence of crime." *Id.* at 833 (emphasis added) (citing *City of St. Paul v. Moody*, 244 N.W.2d 43 (Minn. 1976), and *State v. Wicklund*, 205 N.W.2d 509 (Minn. 1973)).[3] That

---

[3]The odor in *Pierce* was the odor of beer or alcohol, not marijuana. 347 N.W.2d at 831, 833. But that difference is immaterial for present purposes because the rule stated in *Pierce* is broad enough to encompass any contraband that has an odor. *See Torgerson*, 995 N.W.2d at 173 (considering whether "the odor of marijuana (*or any other substance*), alone, is sufficient to create the requisite probable cause to search a vehicle") (emphasis added).

statement, by its plain terms, specifically authorized an officer to search a vehicle based solely on the odor of marijuana emanating from the vehicle.

The *Pierce* opinion was good law for approximately 39 years, from its issuance in 1984 until the *Torgerson* opinion in 2023. During that period, the *Pierce* opinion never was overturned by the supreme court. Furthermore, the validity of the *Pierce* opinion never was questioned, either by the supreme court or by this court. Today's opinion is the first appellate opinion to expressly acknowledge that *Pierce* is inconsistent with the totality-of-the-circumstances analysis required by supreme court caselaw, as clarified by *Torgerson*.

Although the *Lindquist* exception allows an officer to rely only on *binding* appellate precedent, this court's *non-precedential* caselaw nonetheless is relevant to our analysis because it illustrates how the judges of this court understood the applicable law before *Torgerson*. Between 1984 and 2023, this court cited *Pierce* in at least ten non-precedential opinions for the proposition that the odor of marijuana or some other contraband, by itself, was sufficient to establish probable cause for a search of a vehicle pursuant to the automobile exception.[4] Notably, all ten of those opinions were unanimous. In addition,

---

[4]*See State v. Waltz*, No. A21-0603, 2022 WL 829252, at *4 (Minn. App. Mar. 21, 2022); *State v. Browder*, No. A19-1908, 2020 WL 3172848, at *2 (Minn. App. June 15, 2020); *State v. Hunter*, No. A19-1429, 2020 WL 1983310, at *3 (Minn. App. Apr. 27, 2020); *State v. Jackson*, No. A16-1456, 2017 WL 3222526, at *4 (Minn. App. July 31, 2017), *rev. denied* (Minn. Oct. 17, 2017); *State v. Kalberg*, No. A16-0566, 2017 WL 1210110, at *1 (Minn. App. Apr. 3, 2017), *rev. denied* (Minn. June 20, 2017); *State v. Mattison*, No. A15-1423, 2016 WL 5345529, at *3 (Minn. App. Sept. 26, 2016), *rev. denied* (Minn. Dec. 27, 2016); *State v. Clay*, No. A14-1567, 2015 WL 4523693, at *3 (Minn. App. June 29, 2015); *State v. Dickenson*, No. A13-1516, 2014 WL 2807676, at *3 (Minn. App. June 23, 2014); *State v. Carter*, No. A08-0625, 2009 WL 1118902, at *2 (Minn. App. Apr. 28, 2009); *In re Welfare of R.T.*, No. A08-0441, 2009 WL 67313, at *2 (Minn. App. Jan. 13, 2009).

our opinions applying *Pierce* were consistent. We are unaware of any opinion of this court that cites *Pierce* and states that the odor of marijuana, by itself, is *not* a sufficient basis for a search of a vehicle pursuant to the automobile exception. In other words, between 1984 and 2023, the judges of this court uniformly interpreted *Pierce* to provide that an officer may search a vehicle based solely on the odor of marijuana emanating from the vehicle. Because the judges of this court, for nearly four decades, interpreted *Pierce* in that way, a well-trained law-enforcement officer would have been objectively reasonable in believing that he or she could search a vehicle based solely on the odor of marijuana. As the supreme court said in *Lindquist*, "When the law changes after a search . . . , any error rests with judges and not the police." 869 N.W.2d at 871.

As stated above, the state cites four precedential opinions of this court in support of its argument. The other three precedential opinions cited by the state are not sufficiently similar to this case.[5] But none of those three opinions undermines *Pierce* or is inconsistent with the statement in *Pierce* on which the state relies.

---

[5]First, in *State v. Ortega*, 749 N.W.2d 851 (Minn. App. 2008), *aff'd on other grounds*, 770 N.W.2d 145 (Minn. 2009), this court stated that "the odor of marijuana provides an officer with probable cause to suspect criminal activity." *Id.* at 854 (citing *Wicklund*, 205 N.W.2d at 511). The search in *Ortega* was a search of a *person* incident to the person's arrest, not a search of a *vehicle* pursuant to the automobile exception. *Id.* at 852-54. In *Torgerson*, the supreme court made clear that the two bodies of caselaw are separate and distinct. 995 N.W.2d at 171 n.9; *see also State v. Beaulieu*, No. A18-0203, 2018 WL 6442115, at *3 (Minn. App. Dec. 10, 2018) (stating that supreme court opinion in *Ortega* "does not stand for the proposition that a police officer lacks probable cause to search a vehicle based on the smell of marijuana alone"), *rev. denied* (Minn. Feb. 19, 2019).

Second, in *State v. Doren*, 654 N.W.2d 137 (Minn. App. 2002), *rev. denied* (Minn. Feb. 26, 2003), we stated that the "odor of burned marijuana inside a stopped motor vehicle provides probable cause for the search of the vehicle's occupants." *Id.* at 142 (citing

We are mindful of the supreme court's 2009 opinion in *Ortega*, which noted that, at the time of the 1973 opinion in *Wicklund* (which *Pierce* cited), the possession of "any amount of marijuana was a criminal offense" and that the controlled-substance statutes were amended in 1976 "to provide that possessing a small amount of marijuana was only a petty misdemeanor." 770 N.W.2d at 149 n.2 (citing Minn. Stat. § 152.15, subd. 2(4) (1971), and 1976 Minn. Laws ch. 42, § 1, at 101-02 (codified at (by amending) Minn. Stat. § 152.15, subd. 2(5) (1976))); *see also* Minn. Stat. § 152.15, subd. 2(5) (1974). The supreme court in *Ortega* cautioned, in a footnote, that a probable-cause determination must consider whether there is a fair probability of "a criminal amount of marijuana." 770 N.W.2d at 149 n.2 (emphasis omitted). At the time of the search in *Ortega*, a person could have possessed 42.5 or fewer grams of marijuana *on his or her person* without committing a crime. *See* Minn. Stat. §§ 152.01, subd. 16, 152.027, subd. 4(a) (2008). At the times of the searches in both *Ortega* and in this case (and as far back as 1974), it was a crime to possess a lesser amount, more than 1.4 grams, of marijuana *in a vehicle*. Minn. Stat. § 152.027, subd. 3 (2018); *see also* 1973 Minn. Laws ch. 693, § 11, at 1894-95 (codified at Minn. Stat. § 152.15, subds. 2(4), 2(5) (1974)); 1989 Minn. Laws ch. 290, art. 3, §§ 14,

---

*Wicklund*, 205 N.W.2d at 511). The *Doren* opinion is distinguishable for the same reason that the *Ortega* opinion is distinguishable.

Third, in *State v. Thiel*, 846 N.W.2d 605 (Minn. App. 2014), *rev. denied* (Minn. Aug. 5, 2014), we stated that the "discovery of marijuana in a car gives law enforcement probable cause to search for more anywhere in the car where one might reasonably expect to find marijuana." *Id.* at 611. This statement does not specifically refer to the *odor* of marijuana alone. In fact, the officer in *Thiel* discovered the presence of marijuana by smelling it, by asking the defendant whether there was marijuana in the vehicle (which prompted the defendant to give the officer a pipe with "a small amount of partially burnt marijuana"), and by conducting a canine sniff test. *Id.* at 609.

37, 38, at 1601-02, 1612; Minn. Stat. § 152.027, subd. 3 (1990). Between the supreme court's 2009 *Ortega* opinion and its 2023 *Torgerson* opinion, this court consistently concluded that searches of vehicles were lawful on the ground that odors of marijuana indicated quantities greater than the 1.4-gram threshold.[6] Consequently, the supreme court's *Ortega* opinion does not alter our conclusion that, in October 2019, a well-trained officer would have had an objectively reasonable belief that the odor of marijuana emanating from a vehicle, by itself, established probable cause for a search of the vehicle pursuant to the automobile exception, so long as the officer believed that a person inside the vehicle had committed a crime by possessing more than 1.4 grams of marijuana.

**E.**

Our esteemed dissenting colleague reasons that a well-trained law-enforcement officer would *not* have been objectively reasonable in relying on *Pierce* in October 2019 because, in essence, the *Pierce* opinion incorrectly interpreted the supreme court's opinions

---

[6]*See State v. Jackson*, No. A16-1456, 2017 WL 3222526, at *4 (Minn. App. July 31, 2017), *rev. denied* (Minn. Oct. 17, 2017); *State v. Odette*, No. A15-0944, 2016 WL 1081239, at *3 (Minn. App. Mar. 21, 2016); *State v. McCurtis*, No. A10-0754, 2011 WL 1235838, at *3 (Minn. App. Apr. 5, 2011); *cf. State v. Austin*, No. A23-1326, 2024 WL 3024907, at *2 (Minn. App. June 17, 2024) (citing *Torgerson* and concluding that odor of marijuana alone did not establish probable cause for criminal amount of marijuana in vehicle); *State v. Lindekugel*, No. A22-1296, 2024 WL 546445, at *4 (Minn. App. Feb. 12, 2024) (citing *Torgerson* and concluding that totality of circumstances established probable cause for criminal amount of marijuana in vehicle), *rev. denied* (Minn. May 14, 2024).

This court's non-precedential opinion in *State v. Hughes*, 2017 WL 3469727 (Minn. App. Aug. 14, 2017), is not an exception to this court's caselaw concerning the odor of marijuana and the automobile exception. *See infra* D8-9. The search in *Hughes* was—like the search in *Ortega*—a search of a person incident to the person's arrest, not a search of a vehicle pursuant to the automobile exception. *Id.* at *3-4. As explained above, the two bodies of caselaw are separate and distinct. *See Torgerson*, 995 N.W.2d at 171 n.9; *see also supra* 14 n.5.

in *Wicklund* and *Moody*. *See infra* at D2-D6. We need not and should not question the reasoning in *Pierce* by critically examining the details and nuances of *Wicklund* and *Moody*. In *Lindquist*, the supreme court did *not* consider whether a well-trained officer would have known in February 2011 that *State v. Shriner*, 751 N.W.2d 538 (Minn. 2008), and *State v. Netland*, 762 N.W.2d 202 (Minn. 2009), were incorrect, which later became apparent in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), based on *Missouri v. McNeely*, 569 U.S. 141 (2013). *See Lindquist*, 869 N.W.2d at 877-79. Rather, it was sufficient that *Shriner* and *Netland* had clearly stated that the rapid, natural dissipation of blood-alcohol evidence is a single-factor exigent circumstance that justifies a warrantless, non-consensual blood draw. *See id.*; *see also Netland*, 762 N.W.2d at 214; *Shriner*, 751 N.W.2d at 549-50. Likewise, in *Davis*, the United States Supreme Court did *not* consider whether a well-trained officer would have known in April 2007 that *United States v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996), had misconstrued *New York v. Belton*, 453 U.S. 454 (1981), as became apparent when the Court issued its opinion in *Arizona v. Gant*, 556 U.S. 332 (2009). *See Davis*, 564 U.S. at 239-41. Rather, it was sufficient that *Gonzalez* had clearly stated that an officer could search a vehicle's passenger area and glove compartment incident to the driver's arrest, even if the driver had been removed from the vehicle. *See id.*; *see also* 71 F.3d at 824-27. The *Davis* Court commented that the officer's search "followed the Eleventh Circuit's *Gonzalez* precedent to the letter" and that, "[a]lthough the search turned out to be unconstitutional under *Gant*, . . . the officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way." *Id.*, 564 U.S. at 239-40. So too here: it is sufficient that the *Pierce* opinion clearly stated, "It has long

17

been held that the detection of odors alone, which trained police officers can identify as being illicit, constitutes probable cause to search automobiles for further evidence of crime." 347 N.W.2d at 833.

Our dissenting colleague also reasons that a well-trained law-enforcement officer would not have been objectively reasonable in relying on *Pierce* in October 2019 because the supreme court, in its 2009 *Ortega* opinion, clarified (in a footnote) its own caselaw, without mentioning *Pierce* (or *Moody*, on which *Pierce* had relied). *See infra* at D5-D8. The dissent's reliance on *Ortega* is not supported by any caselaw stating that, for purposes of the *Lindquist* or *Davis* exceptions to the exclusionary rule, a precedential opinion may cease to be binding in such a subtle and circuitous way. To the contrary, at least one federal circuit court has recognized that law-enforcement officers may reasonably rely on precedential caselaw that has not been expressly overruled. *See Barraza-Maldonado*, 732 F.3d at 869 (stating that officers "should not be faulted for adhering to existing precedent until that precedent is authoritatively overruled").

The dissenting opinion implies that a law-enforcement officer is not well trained—and, thus, not capable of objectively reasonable reliance on binding appellate precedent—unless the officer is trained to the same extent as a law professor or constitutional scholar. The dissent would, in effect, require officers to *not* accept appellate opinions at face value but, rather, to question appellate opinions and attempt to discern whether they are well reasoned and consistent with other precedential opinions. If an officer actually were to engage in that thought process, the officer surely would shy away from many valid law-enforcement practices that would yield incriminating evidence. To require officers to

18

critically analyze binding appellate precedent before relying on it would "impose[] substantial social costs" and would go far beyond "the central purpose of the exclusionary rule," which is the "deterrence of police misconduct." *See Lindquist*, 869 N.W.2d at 871 (quotation omitted). Furthermore, imposing such a requirement would be contrary to the core purpose of precedent: to "'foster[] reliance on judicial decisions,'" to "'promote the stability of the law and the integrity of the judicial process,'" and to "promote[] the important values of 'stability, order, and predictability.'" *See Chauvin*, 955 N.W.2d at 690 (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), *Schuette v. City of Hutchinson*, 843 N.W.2d 233, 238 (Minn. 2014), and *Fleeger v. Wyeth*, 771 N.W.2d 524, 529 (Minn. 2009)). Given these fundamental principles, we should not interpret the *Lindquist* exception in a way that requires law-enforcement officers to question and possibly disregard—rather than simply rely on and follow—binding appellate precedent.

**F.**

We now apply the *Lindquist* exception to the facts of this case. In October 2019, binding appellate precedent specifically authorized the search of a vehicle based on the odor of marijuana alone. *See Pierce*, 347 N.W.2d at 833. In light of *Pierce*, the officer who searched the vehicle driven by Douglas acted in objectively reasonable reliance on binding appellate precedent.[7] Consequently, the district court erred by not applying the

---

[7]We acknowledge that this court reached a seemingly contrary conclusion in *State v. Robinson*, No. A23-0251, 2024 WL 222475, at \*3 (Minn. App. Jan. 22, 2024). But in *Robinson*, we considered only whether *the supreme court* had specifically authorized a search of a vehicle based on the odor of marijuana alone, and we answered that question in the negative based on the supreme court's statement in *Torgerson* that it never had done so. *Id.* (citing *Torgerson*, 995 N.W.2d at 173). We did *not* consider in *Robinson* whether

19

*Lindquist* exception to the exclusionary rule. Accordingly, we reverse the district court's grant of Douglas's motion, and we remand for further proceedings on both charges.

## DECISION

The district court erred by granting Douglas's motion to suppress evidence and to dismiss. Therefore, we reverse and remand for further proceedings.

**Reversed and remanded.**

---

*this court's* precedential caselaw specifically authorized such a search. *See id.* Our narrow analysis of the *Lindquist* exception in *Robinson* may be explained by the fact that the appeal was briefed before the supreme court issued its *Torgerson* opinion, so the state understandably did not argue for the application of the *Lindquist* exception to the exclusionary rule. In this case, however, the state urges the court to apply the *Lindquist* exception and relies on this court's precedential caselaw, including *Pierce*. Thus, our analysis in this case is not in conflict with our analysis in *Robinson*.

**ROSS**, Judge (dissenting)

The point of disagreement is clear. Evidence seized in an unconstitutional police search avoids exclusion under the good-faith exception to the exclusionary rule only "when binding appellate precedent specifically *authorizes*" the search, because only then can we say that a well-trained police officer has searched on an objectively reasonable basis. *Davis v. United States*, 564 U.S. 229, 241 (2011); *State v. Lindquist*, 869 N.W.2d 863, 876 (Minn. 2015) (emphasizing that "the binding precedent must specifically authorize the behavior"). The majority believes that, in October 2019, "binding appellate precedent" held "that the odor of marijuana alone established probable cause for a warrantless search of a vehicle pursuant to the automobile exception to the warrant requirement." I am confident that, in sharp contrast, in October 2019 binding appellate precedent certainly did not hold "that the odor of marijuana alone established probable cause for a warrantless search of a vehicle." Indeed, the majority has not cited *any* precedential opinion issued by a Minnesota appellate court that has held constitutional a vehicle search resulting from the odor of marijuana alone. Only one such case exists, but the supreme court rejected the holding. I therefore respectfully dissent from the well-crafted majority opinion.

The majority posits that the supreme court's 2023 decision in *State v. Torgerson*, 995 N.W.2d 164, 166 (Minn. 2023), with its holding that "the odor of marijuana emanating from a vehicle, alone, is insufficient to create the requisite probable cause to search a vehicle under the automobile exception to the warrant requirement," was the first time a police officer would have had an objective reason to doubt that the odor of marijuana alone establishes probable cause to search a car. The majority further believes that "[t]he most

D-1

applicable" case in support of its holding is this court's 1984 decision in *State v. Pierce*, 347 N.W.2d 829 (Minn. App. 1984). *Pierce* might apply, but it cannot support the majority's conclusion that, in October 2019, binding precedent held that the odor of marijuana alone establishes probable cause for a warrantless vehicle search.

The majority appears to read into *Pierce* a rule too broad for the *Pierce* court to have established. That is, the majority erroneously treats *Pierce*'s dicta as binding precedent. Specifically relying on the supreme court's 1973 decision in *State v. Wicklund*, 205 N.W.2d 509 (Minn. 1973), and the 1976 decision of *City of St. Paul v. Moody*, 244 N.W.2d 43 (Minn. 1976), this court's *Pierce* decision attempted to summarize those cases, saying, "*It has long been held that* the detection of odors alone, which trained police officers can identify as being illicit, constitutes probable cause to search automobiles for further evidence of crime." 347 N.W.2d at 833 (emphasis added). No fair reading of that statement in *Pierce* can lead one to conclude that the *Pierce* court intended to establish a broad new rule of law. And in any event, it is not the broad pronouncements that an appellate court might make summarizing prior caselaw that establish an opinion's binding rule of law; its rule of law, or holding, is instead the legal principle that is essential to decide the issue actually before the court based on the circumstances involved. This is because "[d]icta . . . generally is considered to be expressions in a court's opinion [that] go beyond the facts before the court and therefore are the individual views of the author of the opinion *and [are] not binding in subsequent cases*." *State ex rel. Foster v. Naftalin*, 74 N.W.2d 249, 266 (Minn. 1956) (emphasis added). As we shall see by considering the simple facts

confronting the *Pierce* court, the majority reads too much into *Pierce* by treating its dicta as "binding appellate precedent."

The circumstances of *Pierce* and the two cases it relies on (*Wicklund* and *Moody*), along with a plain reading of the supreme court's later 2009 *Ortega* decision actually applying and clarifying *Wicklund*, seem to defeat the majority's reliance on *Pierce* as the foundation for its holding today. Let's first consider the circumstances in *Pierce* to determine its actual holding. The *Pierce* court concluded that police had probable cause to search Pierce's car to find open alcoholic beverages after officers smelled the odor of alcoholic beverages emanating from inside Pierce's car. 347 N.W.2d at 833. This is because the officers in that case knew that Pierce could be taken immediately into custody if he possessed any alcoholic beverage in his car, as it was uniquely illegal for Pierce to possess any amount of alcohol whatsoever based on the specific terms of his probation. *Id.* The actual binding precedent established by *Pierce* based on the express reasoning of the *Pierce* court rather than on its dicta is this: police conducting a legal vehicle stop had "probable cause, allowing [them] to search the car for evidence of an 'open bottle' violation under the automobile exception to the warrant requirement" when police (1) "recognized the [driver] and knew him to be on probation," (2) "knew also that [he] was not supposed to be drinking or to be in possession of beer," (3) "noticed the smell of beer or alcohol coming from the car," and (4) "noticed an open case of beer in the car with cans missing and a metal can tab on the floor." *Id.* After detailing those facts the *Pierce* court immediately concluded, "This constituted . . . probable cause" for the search. *Id. Pierce* simply does not stand for the proposition that the smell of marijuana (or any other

substance) *alone* establishes probable cause to conduct a vehicle search. Although the *Pierce* court went on to purportedly summarize the holdings of the two prior supreme court cases, that summary was wholly unnecessary to its decision, and it is dicta.

Likewise in *Wicklund*, the first case *Pierce* was attempting to summarize, police did not simply smell an illicit substance and search a car. In that case, the supreme court held that police officers who smelled the odor of burned marijuana emanating from inside Wicklund's car and also noticed that the occupants were engaging in suspicious, furtive movements had probable cause to search Wicklund. *Wicklund*, 205 N.W.2d at 511. Trained Minnesota police officers in 1973 could identify marijuana as being illicit under Minnesota Statutes sections 152.09, subdivision 1(2), and 152.15, subdivision 2(4) (1971), which criminalized the possession of marijuana. *See State v. Siirila*, 193 N.W.2d 467, 471–72 (Minn. 1971) (noting that the legislature, in its 1971 session, had determined that possession of even a small amount of marijuana was a crime). This is why the smell, coupled with furtive movements, established probable cause to search the vehicle.

Similarly in *Moody*, the second case *Pierce* was purportedly summarizing, the supreme court examined the constitutionality of a search of a parked car with heavily fogged windows after an occupant opened the door and an officer "detected a strong odor of paint fumes emanating from the interior of the car" and immediately suspected "that the occupants had been paint sniffing." *Moody*, 244 N.W.2d at 44 (describing "paint sniffing" as a criminal "offense"). Under those circumstances, the supreme court concluded that the officers had probable cause to search to find evidence of the offense. *Id.* Once again, it had not been the smell of the illicit odor *alone* that justified the search.

Even without going further, we can see four errors undermining the majority's reliance on the *Pierce* statement as "binding appellate precedent" holding that the odor of marijuana *alone* constitutes probable cause for a vehicle search. First, the statement occurred in a case that had nothing to do with marijuana. Second, the statement occurred in an opinion establishing probable cause based not on odor "alone" but also on additional suspicious behavior. Third, the statement was at most nonbinding dicta summarizing prior caselaw and not the basis of the court's decision, let alone an attempt to establish a new rule of law. And fourth, the dicta summary of prior caselaw was overly broad and therefore inaccurate. Because neither *Pierce* nor *Wicklund* nor *Moody* stood for the specific proposition that the odor of marijuana in a car, without more, establishes probable cause to search the car for marijuana, we cannot rightly say that "binding appellate precedent specifically authorized" the search here under *Davis* and *Lindquist*. So even if *Pierce* constituted the last word on the subject before 2019, the majority's holding today would be flawed.

But *Pierce* was not the last word before October 2019. The supreme court gave us that last word in 2009. That occurred when the supreme court decided *State v. Ortega*, 770 N.W.2d 145, 152 (Minn. 2009), expressly putting its own caselaw into context. Between the time of the supreme court's decision in *Wicklund* and its decision in *Ortega*, the legislature decriminalized the possession of small amounts of marijuana while it continued to criminalize the possession of larger amounts. *Compare* Minn. Stat. § 152.15, subd. 2(5) (1974) (stating that "a small amount of marijuana" is a misdemeanor crime) *with* Minn. Stat. § 152.15, subd. 2(5) (1976) (stating that "a small amount of marijuana" is a petty

misdemeanor offense). In that context, the *Ortega* court reviewed a decision of this court in which we had considered the legislative decriminalization change but reasoned that the odor of marijuana continued to be a driving consideration supporting a search. 770 N.W.2d at 149 n.2. Citing *Wicklund*, we had held, "[T]he odor of marijuana provides an officer with probable cause to suspect criminal activity." *State v. Ortega*, 749 N.W.2d 851, 854 (Minn. App. 2008), *aff'd but criticized*, 770 N.W.2d 145 (Minn. 2009). But the supreme court corrected our holding, expressly refusing to follow our marijuana-odor-alone-establishes-probable-cause reasoning, and it went further to specifically announce the clarification that certainly still applied in 2019 (and still applies today): "We take this opportunity to clarify that the odor of burnt marijuana justified the warrantless search in *Wicklund* because it provided the officer probable cause to believe Wicklund possessed a *criminal* amount of marijuana as possession of any amount of marijuana was a crime under then-existing law." *Ortega*, 770 N.W.2d at 149 n.2. In other words, *Pierce* can be said to have accurately summarized *Wicklund* when it declared that "the detection of odors alone, which trained police officers can identify as being illicit, constitutes probable cause to search automobiles," only if an "illicit" odor refers to a substance that, if found in the occupant's possession, would justify an immediate arrest. *Pierce*, 347 N.W.2d at 833.

Because the supreme court's 2009 *Ortega* decision overruled this court's holding in *Ortega* that "[t]he odor of marijuana provides an officer with probable cause to suspect criminal activity," the majority is not correct today to declare that, ten years after *Ortega* in 2019, "binding appellate precedent" held "that the odor of marijuana alone established probable cause for a warrantless search of a vehicle pursuant to the automobile exception

to the warrant requirement." The accurate statement of the law in October 2019 for the purposes of applying the automobile exception to the warrant requirement is actually this: it was clear by 2009 that binding appellate precedent held that the odor of marijuana alone does *not* establish probable cause for a warrantless search of a vehicle because the odor may be evidence of only a noncriminal amount of marijuana.

I also cannot join the majority's implicit reasoning that ten expressly *nonbinding*, *nonprecedential* decisions of this court equals "binding appellate precedent" under *Davis*, 564 U.S. at 241, and *Lindquist*, 869 N.W.2d at 876. The majority says that "[a]lthough the *Lindquist* exception allows an officer to rely only on *binding* appellate precedent, this court's *non-precedential* caselaw nonetheless is relevant to our analysis because it illustrates how the judges of this court understood the applicable law before *Torgerson*." It then cites ten nonprecedential opinions in which it says this court cited *Pierce* "for the proposition that the odor of marijuana or some other contraband, by itself, was sufficient to establish probable cause for a search of a vehicle." I have reviewed those ten nonbinding opinions, most of which in fact involved additional circumstances, not just the odor of an illicit substance. I need not outline them here, because they are irrelevant to the issue we face today for reasons that I believe are apparent. This court's pre-*Ortega* opinions are not relevant to the issue because *Ortega*'s clarifying explanation necessarily overrules them, and our post-*Ortega* opinions are not relevant if they fail to address *Ortega*'s reasoning rejecting this court's holding that the smell of marijuana alone justifies a vehicle search. The idea proposed by the majority—which is that if several panels of this court in nonprecedential opinions have for some reason not noticed binding supreme court

precedent, police officers act in an objectively reasonable fashion by relying on those nonprecedential opinions as binding precedent—lacks legal support and is inconsistent with the premise that only appellate precedent authorizing specific Fourth Amendment conduct can form the basis of objectively reasonable police conduct.

I add that our nonbinding opinions are by no means uniform on the issue. Indeed, we expressly addressed *Pierce* and *Ortega* and *Wicklund* in only one of our nonprecedential opinions after the *Ortega* decision, and in that opinion we clarified the status of the law in a manner that weakens the majority's premise today:

> The district court erred because the smell of marijuana emanating from a vehicle, on its own, does not provide probable cause to arrest the vehicle's occupants and conduct a full search incident to arrest. To support the conclusion that the odor of marijuana from the vehicle provided the officer with probable cause to search Hughes's person, the district court cited . . . *Pie[r]ce* . . . [and this court's opinion in] *Ortega* (*Ortega I*) . . . .
>
> In *Ortega I*, . . . this court held, citing . . . *Wicklund* . . ., that the smell of burnt marijuana gave police probable cause to search the vehicle's occupants. . . .
>
> But the reasoning in *Ortega I* is no longer good law. . . . In a footnote, the supreme court disapproved of this court's reasoning in *Ortega I*. . . . The supreme court clarified that . . . an odor of marijuana providing probable cause that a person possesses a noncriminal amount of marijuana does not, in and of itself, create probable cause . . . [to arrest and search].

*State v. Hughes*, No. A16-1481, 2017 WL 3469727, at *3–4 (Minn. App. Aug. 14, 2017). So even if statements found in nonprecedential, nonbinding opinions were part of the analysis when deciding whether to apply the good-faith exception to the exclusionary rule, the exception should not apply here. This is because the exception never applies when "the

law is unsettled," *Lindquist*, 869 N.W.2d at 877, and *Hughes* demonstrates that the law relied on by the majority was, at best, unsettled in 2019. I am unmoved by the majority's observation that "[t]he search in *Hughes* was—like the search in *Ortega*—a search of a person incident to the person's arrest, not a search of a vehicle pursuant to the automobile exception" and its view that those cases don't matter here because "the two bodies of caselaw are separate and distinct." The body of caselaw might be separate and distinct, but the threshold legal issue is not. In all these cases the issue is whether the odor of marijuana alone established probable cause; whether the consequence was a search *incident to* arrest or a search *resulting in* arrest is inconsequential to the threshold legal question of probable cause.

Given that the United States and Minnesota Supreme Courts strictly limit the exception to an officer's reliance "*only*" on "*binding* appellate *precedent*" that "specifically authorizes" the precise search at issue, the relevant caselaw prohibits me from joining the majority's reliance on expressly nonbinding, nonprecedential decisions. And given that *Pierce* is not binding appellate precedent specifically authorizing police to search a vehicle based only on the odor of marijuana, I think the majority mistakenly relies on it for that conclusion. I admit the reasonableness of the majority's theory that police officers might base policing decisions on statements in our nonprecedential appellate decisions. But the rule outlining the exception to the exclusionary rule does not incorporate that theory. I therefore believe that the district court is correct and that we should affirm its decision excluding the evidence obtained after police searched Douglas's car unconstitutionally, based only on the odor of marijuana.