STATE OF MINNESOTA

IN SUPREME COURT

A24-0385

Court of Appeals                                                    Thissen, J.
                                            Dissenting, Procaccini, Moore, III, JJ.


State of Minnesota,

                    Respondent,

vs.                                                          Filed: December 24, 2025
                                                            Office of Appellate Courts
Raenard Romalle Douglas,

                    Appellant.

_____


Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Elisabeth M. Johnson, Assistant Scott County Attorney, Shakopee, Minnesota, for respondent.

Anders J. Erickson, Johnson Erickson Criminal Defense, Minneapolis, Minnesota, for appellant.

_____

S Y L L A B U S

The good-faith exception to the exclusionary rule does not apply to a warrantless vehicle search based solely on the smell of marijuana that occurred before we issued our opinion in *State v. Torgerson*, 995 N.W.2d 164 (Minn. 2023), which held that the odor of

marijuana alone is insufficient to create probable cause to search a vehicle under the automobile exception to the warrant requirement.

Reversed and remanded.

O P I N I O N

THISSEN, Justice.

During a traffic stop of appellant Raenard Romalle Douglas, a law enforcement officer conducted a warrantless search of the vehicle based solely on the smell of marijuana. While searching the vehicle, the officer found ammunition in a safe located inside a briefcase in the backseat. At the time, Douglas was prohibited from possessing ammunition. He was subsequently charged with possessing ammunition as an ineligible person in violation of Minn. Stat. § 624.713, subd. 2(b). Douglas moved to exclude the ammunition at trial, arguing that the officer's warrantless search of the vehicle violated his constitutional right to be free from an unreasonable search.

In *State v. Torgerson*, 995 N.W.2d 164, 166 (Minn. 2023), we held that "the odor of marijuana emanating from a vehicle, alone, is insufficient to create the requisite probable cause to search a vehicle under the automobile exception to the warrant requirement." Under this decision, the search of Douglas's vehicle was unconstitutional. But the search of Douglas's vehicle occurred *before* we issued our decision in *Torgerson*. Respondent State of Minnesota argues that the ammunition is therefore admissible under the good-faith exception to the exclusionary rule. We disagree and hold that the good-faith exception to the exclusionary rule does not apply.

2

# FACTS

On October 27, 2019, at approximately 11:42 p.m., an officer with the Savage Police Department observed a vehicle traveling on the road without a front license plate and with a suspended object hanging from the rearview mirror. The officer stopped the vehicle and identified the driver as Douglas. Douglas provided the officer with identifying information and proof of insurance. A records search revealed that the Commissioner of Public Safety had cancelled Douglas's license as inimical to public safety under Minn. Stat. § 171.04, subd. 1(10).

The officer asked Douglas to step out of the car. He informed Douglas that he would be searching the vehicle because there was "a very strong odor of marijuana coming out of the car." The officer later testified that he searched the vehicle because he smelled burnt marijuana. He provided no other reason for the search. The officer did not observe any marijuana or paraphernalia in plain view before searching the vehicle. Further, he never articulated—either at the time of the search or in his later testimony—what evidence he was searching for in the vehicle.

During the search, the officer observed multiple burnt "roaches"—a name for the end of a marijuana cigarette—throughout the vehicle. The officer found a safe inside a leather briefcase in the backseat of the car. After unsuccessfully seeking Douglas's consent to search the safe (Douglas claimed he did not know how to open the lock), the officer broke the safe open with a multi-tool and found ammunition inside. The officer then ran a search of Douglas's criminal history and discovered that he had previously been convicted of a crime of violence, which made Douglas ineligible to possess ammunition. *See* Minn.

Stat. § 624.713, subd. 1(2). The officer arrested Douglas, and the State charged him with (1) possessing ammunition as an ineligible person in violation of Minn. Stat. § 624.713, subd. 2(b); and (2) driving after cancellation–inimical to public safety in violation of Minn. Stat. § 171.24, subd. 5.

On September 23, 2023, we released our opinion in *State v. Torgerson*. In *Torgerson*, we held that "the odor of marijuana emanating from a vehicle, alone, is insufficient to create the requisite probable cause to search a vehicle under the automobile exception to the warrant requirement." 995 N.W.2d at 166.[1] Douglas subsequently moved to suppress the evidence obtained during the search of his vehicle and dismiss the charge of possession of ammunition by an ineligible person. The district court granted the motion. Relying on *Torgerson*, the district court concluded that the odor of marijuana alone was insufficient to create probable cause to search the vehicle and that the good-faith exception to the exclusionary rule did not apply.

The State appealed the district court's pretrial order dismissing the possession charge. In a split decision, the court of appeals reversed the district court's order, holding that the good-faith exception to the exclusionary rule that we articulated in *State v. Lindquist*, 869 N.W.2d 863 (Minn. 2015), applied to the search of Douglas's vehicle. *State v. Douglas*, 12 N.W.3d 751, 763–64 (Minn. App. 2024). The dissent, in contrast,

---

[1]     We note that over four years passed between the search of Douglas's vehicle and our decision in *Torgerson*. The record shows that Douglas's case went to trial in November 2021, but the jurors failed to reach a unanimous verdict on either the ineligible person in possession of ammunition charge or the driving after cancellation charge. Douglas's retrial has been delayed multiple times for various reasons. Douglas moved to suppress the ammunition following the mistrial and before retrial.

maintained that there was no binding appellate precedent at the time of Douglas's arrest that would have authorized the officer's search. *Id.* at 764 (Ross, J., dissenting). Douglas petitioned this court for further review of the court of appeals decision.

**ANALYSIS**

We are asked to decide whether the good-faith exception to the exclusionary rule applies to a warrantless vehicle search based solely on the odor of marijuana that occurred before we held in *Torgerson* that the odor of marijuana alone is insufficient to establish probable cause for such a search. The State bears the burden of establishing an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001).[2]

The United States and Minnesota Constitutions protect individuals against unreasonable searches and seizures. U.S. Const.. amend. IV; Minn. Const.. art. I, § 10. The exclusionary rule prohibits evidence obtained in violation of an individual's constitutional rights from being used in a criminal proceeding against the victim of the illegal search or seizure. *Mapp v. Ohio*, 367 U.S. 643, 656–57 (1961); *State v. Malecha*, 3 N.W.3d 566, 571 (Minn. 2024).

The ammunition found in the vehicle that Douglas was driving was obtained in violation of the constitutional protections against unreasonable searches and seizures. The *only* reason the officer provided for the search was that he smelled marijuana coming from

---

[2] When the State seeks appellate review of a pretrial order, it must show that the ruling has a critical impact on the State's ability to prosecute the case. Minn. R. Crim. P. 28.04, subd. 2(2)(b); *State v. Underdahl*, 767 N.W.2d 677, 681 (Minn. 2009). The court of appeals determined that the district court's decision to suppress the ammunition in Douglas' vehicle and dismiss the possession of ammunition by an ineligible person charge had a critical impact. No one challenges that decision.

the vehicle. In *Torgerson*, we reaffirmed that, before searching an automobile without a warrant, law enforcement must determine that the totality of the circumstances indicates that there is a fair probability that the search will lead to contraband or evidence of a crime. 995 N.W.2d at 173. The odor of marijuana is one circumstance that an officer may consider in their totality of the circumstances assessment, but there is no bright-line rule that the odor of marijuana on its own is sufficient to create the requisite probable cause to justify a warrantless search. *Id.* As the district court aptly noted, the officer who searched Douglas's vehicle did not identify any circumstances besides the smell of marijuana to justify his search.

The State concedes that the officer's search was unlawful but asks us to allow the ammunition obtained to be admitted at trial under the good-faith exception to the exclusionary rule. We decline to do so.

A.

The U.S. Constitution and the Minnesota Constitution protect individuals against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. The exclusionary rule prohibits evidence obtained in violation of the Fourth Amendment from being used in a criminal proceeding against the victim of the illegal search or seizure. *United States v. Calandra*, 414 U.S. 338, 347 (1974); *Mapp*, 367 U.S. at 655 (applying the exclusionary rule to the states). The good-faith exception to the exclusionary rule precludes suppressing illegally obtained evidence where an officer acts in good faith on the reasonable belief that their conduct is lawful. *United States v. Leon*, 468 U.S. 897, 913 (1984).

6

We have adopted the good-faith exception in one limited circumstance. It applies only if binding precedent specifically authorized the officer's behavior; "[l]aw enforcement cannot extend the law to areas in which no precedent exists or the law is unsettled."[3] *Lindquist*, 869 N.W.2d at 876–77 (citation omitted) (internal quotation marks omitted).

In *Lindquist*, law enforcement facilitated a warrantless blood draw on Lindquist, who was suspected of driving while intoxicated. *Id.* at 865. At that time, our precedents in *State v. Shriner* and *State v. Netland* held that the dissipation of alcohol from blood created a single-factor exigency permitting a warrantless search of blood from a driver suspected of driving while intoxicated. *Shriner*, 751 N.W.2d 538, 549–50 (Minn. 2008); *Netland*, 762 N.W.2d 202, 213 (Minn. 2009). Notably, the warrantless searches in *Shriner* and *Netland* would not have been constitutional in the absence of the rule we adopted; the per se-exigency rule was necessary to the outcome of those cases. The results of Lindquist's blood draw showed that she had an alcohol concentration of .23 approximately two hours after driving, and she was convicted of driving while impaired. *Lindquist*,

---

[3]    By contrast, the United States Supreme Court has adopted several good-faith exceptions to the exclusionary rule. *See, e.g.*, *Leon*, 468 U.S. at 922 (1984) (objectively reasonable reliance on a warrant later held invalid); *Illinois v. Krull*, 480 U.S. 340, 350–52 (1987) (objectively reasonable reliance on subsequently invalidated statute); *Arizona v. Evans*, 514 U.S. 1, 14–15 (1995) (objectively reasonable reliance on erroneous information concerning an arrest warrant); *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984) (objectively reasonable reliance on a warrant later held invalid because of a clerical error). As a matter of state constitutional law, we have repeatedly rejected arguments to adopt additional good-faith exceptions in Minnesota. *Malecha*, 3 N.W.3d at 573, 579 (stating that we independently determine whether constitutional remedies, such as exclusion, apply under the Minnesota Constitution and declining to adopt the *Evans* good-faith exception); *see also State v. Zanter*, 535 N.W.2d 624, 634 (Minn. 1995) (declining to adopt the *Leon* good-faith exception); *Lindquist*, 869 N.W.2d at 877 (declining to decide whether the good-faith exception should apply in other circumstances).

7

869 N.W.2d at 865. While Lindquist was appealing her case, the U.S. Supreme Court issued its decision in *Missouri v. McNeely*, 569 U.S. 141, 165 (2013), which held that metabolization of alcohol in the bloodstream does *not* create a per se exigency justifying a warrantless blood draw for individuals suspected of driving while intoxicated. *McNeely* directly overruled our holdings in *Shriner* and *Netland*.

Even though, under *McNeely*, Lindquist's warrantless blood draw was unconstitutional, we determined that the results of the blood test could still be admitted at trial based on the good-faith exception to the exclusionary rule. *Lindquist*, 869 N.W.2d at 877–78.[4] We held that the exception applies where an officer acts in objectively reasonable

[4]    Four years before our decision in *Lindquist*, the U.S. Supreme Court applied the good-faith exception under similar circumstances in *Davis v. United States*. 564 U.S. 229 (2011). In that case, police officers lawfully arrested Davis during a traffic stop, handcuffed him, and placed him in the back of a patrol car before searching his vehicle. *Id.* at 235. During the search, police found a revolver inside Davis's jacket located in the passenger compartment. *Id.* Davis was subsequently convicted in federal court of possession of a firearm by a convicted felon. *Id.*

The Eleventh Circuit upheld the search under its precedent in *United States v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996). *Davis*, 564 U.S. at 235. In *Gonzalez*, police arrested Gonzalez and handcuffed him. 71 F.3d at 822. Afterward, an officer searched a closed black leather case found in the glove compartment of Gonzalez's vehicle and discovered a firearm. *Id.* Building on the Supreme Court's decision in *New York v. Belton*, 453 U.S. 454, 462–63 (1981) (upholding a warrantless vehicle search as a valid search incident to arrest), the Eleventh Circuit adopted a bright-line rule that an arresting officer may conduct a warrantless search of the passenger compartment as well as any containers found in that area of a vehicle when an occupant has been lawfully arrested. *Id.* at 825–26. The broad rule the Eleventh Circuit articulated in *Gonzalez* was necessary to its decision in that case because the police conducted their vehicle search after Gonzalez was handcuffed and they opened closed containers in a closed glove compartment as part of their search. *Id.* at 822.

While Davis's appeal was pending, the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332 (2009). *Gant* held that police may only search a vehicle incident to a lawful arrest "if the arrestee is within reaching distance of the passenger compartment at the time

reliance on binding appellate precedent, even when that precedent is subsequently overruled. *Id.* at 876. Therefore, because the officer who facilitated the blood draw on Lindquist acted in good-faith reliance on the bright-line rule set forth in *Shriner* and *Netland*, the exclusionary rule did not require that the results of the blood test be suppressed. *Id.* at 878–79.

In *Lindquist*, we expressly emphasized the narrowness of our holding. *Id.* at 876–77. We stated that the good-faith exception is narrowly focused, applying only if "binding precedent . . . *specifically authorize[d]* the behavior" and, as noted above, that "[l]aw enforcement cannot 'extend the law' to areas in which no precedent exists or the *law is unsettled*." *Id.* (emphasis added) (citing *Davis*, 564 U.S. at 250 (Sotomayor, J., concurring)).

B.

We now turn to the circumstances that the State contends, and the court of appeals concluded, warrant applying the *Lindquist* good-faith exception in this case. The court of appeals determined that its 1984 precedential decision[5] in *State v. Pierce*, 347 N.W.2d 829,

___

of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351. *Gant* altered the broad reading of *Belton* that law enforcement had "widely accepted." *Id.* at 349–50, 349 n.11. More importantly, *Gant* expressly overruled the bright-line rule set forth in *Gonzalez. Davis*, 564 U.S. at 239–40. After *Gant*, it was clear that the search in *Davis* that was lawful under *Gonzalez* was now unlawful. *Id.* The Supreme Court, however, upheld the search in *Davis* under the good-faith exception to the exclusionary rule. *Id.* at 249. For the first time, the Court held that the exclusionary rule does not apply when an officer conducts a search in objectively reasonable reliance on binding appellate precedent. *Id.* at 232.

[5] The parties agree that "binding appellate precedent" includes precedential decisions from the court of appeals when there is no decision from our court on the matter. We presume for purposes of our analysis that the parties are correct.

9

833 (Minn. App. 1984), justifies applying the limited *Lindquist* good-faith exception in Douglas's case. *Douglas*, 12 N.W.3d at 763.

In *Pierce*, a sheriff's deputy lawfully stopped Pierce's vehicle and noticed a strong smell of alcohol coming from inside the car. 347 N.W.2d at 831. In addition to the smell of alcohol, the deputy saw an open case of beer in the backseat with some cans missing, a metal tab from a can lying on the vehicle's passenger-side floor, and a drinking glass on the floor. *Id.* The deputy also knew that Pierce was on probation and was not supposed to be drinking or possess beer. *Id.* In light of *all* these considerations, the deputy concluded that he had probable cause to search Pierce's vehicle for an open bottle violation and did so. *Id.* During the search, the deputy found a pistol for which Pierce did not have a permit. *Id.* The deputy called an investigator to the scene, who obtained a warrant to more thoroughly search the vehicle based on probable cause that Pierce had committed theft and vandalism at a nearby logging camp, crimes for which he was later charged. *Id.*

Pierce moved to suppress the evidence obtained from the search. The district court denied the motion and the court of appeals affirmed. *Id.* at 834. The court of appeals explained its decision as follows:

> In the course of conducting this legal stop, the deputy recognized the appellant and knew him to be on probation. He knew also that Pierce was not supposed to be drinking or to be in possession of beer. The deputy noticed the smell of beer or alcohol coming from the car as appellant got out. He also noticed an open case of beer in the car with cans missing and a metal can tab on the floor. This constituted separate probable cause, allowing the deputy to search the car for evidence of an 'open bottle' violation under the automobile exception to the warrant requirement. Minn.[ ]Stat. § 169.122 (1982). *See State v. Liljedahl*, 327 N.W.2d 27, 30 (Minn.[ ]1982); *State v. Willis*, 320 N.W.2d 726, 728 (Minn.[ ]1982). It has long been held that *the detection of odors alone, which trained police officers can identify as being*

10

> *illicit, constitutes probable cause to search automobiles for further evidence of crime.* City of St. Paul v. Moody, 309 Minn. 104, 244 N.W.2d 43 (Minn.[ ]1976); *State v. Wicklund*, 295 Minn. 403, 205 N.W.2d 509 (Minn.[ ]1973).

*Id.* at 833 (emphasis added). The State urges that the emphasized statement is "binding appellate precedent" and that the officer who searched Douglas's vehicle acted in objectively reasonable reliance on that precedent.

In determining whether the deputy's warrantless search and the investigator's subsequent search of Pierce's vehicle were lawful, the court of appeals in *Pierce* identified several circumstances, in addition to the odor of alcohol, that provided the officer with probable cause to search the vehicle. *Id.* These included the deputy's knowledge that Pierce was on probation and not supposed to be drinking or in possession of beer, the open case of beer with cans missing in the back seat, and the metal tab from a can on the floor. *Id.* That approach is consistent with our longstanding precedent that the totality of the circumstances is the proper framework for assessing probable cause to search a vehicle. *See State v. Lester*, 874 N.W.2d 768, 771 (Minn. 2016) ("Probable cause is an objective inquiry that depends on the totality of the circumstances in each case."); *State v. Yahnke*, 336 N.W.2d 299, 300 (Minn. 1983) ("[T]he totality-of-the-circumstances analysis . . . has traditionally informed probable cause determinations."); *Illinois v. Gates*, 462 U.S. 213, 233 (1983). The court of appeals' additional point that odor alone justified the search was

either a statement in support of the court's totality-of-the-circumstances assessment or an alternative reason supporting the finding of probable cause. *Pierce*, 347 N.W.2d at 833.[6]

Even if we consider the statement in *Pierce* to be an alternative holding, rather than a statement supporting the court's totality-of-the-circumstances assessment, relying on *Pierce* to justify applying the *Lindquist* good-faith exception to the search of Douglas's vehicle is problematic. The officer's assumption—that he had authority to search Douglas's vehicle solely because he smelled marijuana—was not based on binding appellate precedent for two reasons.

First, *Pierce* did not "specifically authorize" the search in question, as *Lindquist* requires. *Lindquist*, 869 N.W.2d at 876. While *Pierce* addressed whether probable cause existed to search a vehicle based on the odor of *alcohol*, the officer in this case searched Douglas's vehicle based on the odor of *marijuana*. As we observed in *State v. Ortega*, 770 N.W.2d 145, 149 n.2 (Minn. 2009), and emphasized in *Torgerson*, 995 N.W.2d at 172, 174–75, after 1976 possession of marijuana is not necessarily a criminal offense. Driving

---

[6]     As in *Pierce* itself, the cases on which the *Pierce* court relied to support this alternative basis for finding probable cause—*State v. Wicklund* and *City of St. Paul v. Moody*—were not decided based on the detection of odors alone. *See Torgerson*, 995 N.W.2d at 171–72 (discussing *Wicklund*, *Moody*, and other decisions in that line of cases). The officers who conducted the search in *Wicklund* relied on their observation that the defendant was "making furtive motions, as though he were attempting to hide something," as well as the odor of burnt marijuana. 205 N.W.2d at 510–11. Moreover, the search in *Wicklund* was of a person rather than a vehicle. *Id.* at 511. In *Moody*, the officer relied on heavily fogged windows and a citizen's report of suspicious behavior in addition to smell to justify the vehicle search. 244 N.W.2d at 44. We said as much in *Torgerson*. 995 N.W.2d at 171 ("[T]he circumstances informing the officer's probable cause determination [in *Moody*] consisted of *considerably more than just the odor* of paint fumes . . . ." (emphasis added)).

12

on a public highway with an open bottle, however, was plainly a criminal offense under all circumstances when *Pierce* was decided. *Compare* Minn. Stat. § 152.027, subds. 3–4 (2018) (criminalizing possession of more than 1.4 grams of marijuana in a motor vehicle as a misdemeanor and classifying possession of a small amount of marijuana as a petty misdemeanor),[7] *with* Minn. Stat. § 169.122 (1982) (criminalizing without qualification drinking, consuming, or possessing intoxicating liquor or nonintoxicating malt liquor).[8] Thus, in *Pierce*, the totality of the circumstances, including the odor of alcohol, provided probable cause to investigate a possible criminal offense. 347 N.W.2d at 831. It stretches *Pierce*'s facts and holding too far to assert that they "specifically authorize" a search based solely on the odor of marijuana.[9] Accordingly, the statement in *Pierce* that the smell of

---

[7] The Legislature repealed sections 152.027, subdivisions 3 and 4, in 2023. Act of May 30, 2023, ch. 63, art. 6, § 73(b), 2023 Minn. Laws 2685, 2900.

[8] During oral argument, the State asserted that in *State v. Hodgman*, 257 N.W.2d 313 (Minn. 1977), decided after the Legislature reduced the penalty for possessing small amounts of marijuana in 1976, we continued to endorse the position that the odor of marijuana alone would constitute probable cause for a warrantless vehicle search. Citing *Wicklund*, we said in *Hodgman* that "[o]nce [the officer] smelled the marijuana, [he] had probable cause to arrest defendant and conduct a full search of both defendant and the car." *Id.* at 315. But the focus of *Hodgman* was the officer's credibility and whether the officer's testimony was consistent with what he was actually able to see. *Id.* at 314. Further, the officer in *Hodgman* not only smelled the odor of burned marijuana but also saw a plastic pill bottle containing small paper folds in an ash tray and knew, based on his training and experience, that this was how people typically carried narcotics. *Id.* *Hodgman* is distinguishable from the case here, where the officer's credibility is not in question and his only justification for searching Douglas's vehicle was the smell of marijuana.

[9] Notably, neither the officer nor the State has ever expressly identified the crime that Douglas was suspected of committing before the officer searched the vehicle. He was ultimately charged with possessing ammunition as an ineligible person and driving after cancellation; Douglas was never charged with a marijuana offense.

alcohol alone provides probable cause to search a vehicle for a possible open bottle offense addresses a materially different situation from whether the smell of marijuana alone provides probable cause to search a vehicle for some unidentified crime.

Second and more important, in the time between the court of appeals' decision in *Pierce* and the search of Douglas's car in 2019, we issued opinions that unsettled the notion that the smell of marijuana alone was sufficient to justify a vehicle search. Our analysis in those cases rested on the fact that for several decades, both before and after *Pierce*, we routinely and repeatedly held that we look to the totality of the unique circumstances of each case to assess whether a warrantless search was justified. *See, e.g.*, *Torgerson*, 995 N.W.2d at 173; *Lester*, 874 N.W.2d at 771; *State v. Perkins*, 582 N.W.2d 876, 878 (Minn. 1998); *State v. Gallagher*, 275 N.W.2d 803, 808 (Minn. 1979).

For example, in *State v. Burbach*, 706 N.W.2d 484, 489 (Minn. 2005), we held that the odor of alcohol emanating from a vehicle is not a per se justification for law enforcement to search a vehicle for open containers of alcohol. We rejected the State's argument that there is a bright-line rule that the odor of alcohol always justifies a warrantless vehicle search. *Id.* Instead, we recognized that individuals have a substantial privacy interest in motor vehicles under the Minnesota Constitution and any bright-line rule would not comport with that constitutional right. *Id.* Our decision in *Burbach* called into question the statement in *Pierce* that "detection of odors alone . . . constitutes probable cause to search automobiles." *Pierce*, 347 N.W.2d at 833; *see also Torgerson*, 995 N.W.2d at 172–73 (analyzing *Burbach*).

Four years after *Burbach*, we again cast doubt upon the reliability of *Pierce's* statement regarding odors alone. In *Ortega*, we examined whether an officer had sufficient probable cause to search Ortega, a vehicle passenger, after noticing the odor of marijuana emanating from the vehicle. 770 N.W.2d at 148–50. Relying partially on *State v. Wicklund*, the court of appeals held that the odor provided the officer probable cause to search Ortega's person. *Id.* at 149 n.2; *State v. Ortega*, 749 N.W.2d 851, 854 (Minn. App. 2008). We disagreed.

While we upheld the search of Ortega on other grounds, we distinguished the search from that in *Wicklund* on the basis that, at the time officers searched Wicklund, possession of any amount of marijuana was a criminal offense. *Ortega*, 770 N.W.2d at 149 n.2.[10] We stated that, after the Legislature decriminalized the possession of a small amount of marijuana in 1976, "probable cause to suspect that a person possesses a non-criminal amount of marijuana, in and of itself, does not trigger the search-incident-to-arrest exception to the warrant requirements of the Fourth Amendment." *Id.* (citing *State v. Martin*, 253 N.W.2d 404, 405–06 (Minn. 1977) (holding that an arrest based on probable cause for possessing a small amount of marijuana was unconstitutional and, as a result, so was a search incident to that arrest)). Like *Burbach*, our decision in *Ortega* unsettled any notion of a bright-line rule that the odor of alcohol or marijuana is itself sufficient to create probable cause for a warrantless search.

---

[10] As we observed in note 6, *supra*, in *Wicklund*, the vehicle search was supported by circumstances beyond the odor of marijuana.

We recognize that *Ortega* involved the warrantless search of an individual passenger incident to arrest, whereas *Pierce* addressed the search of a vehicle under the automobile exception to the warrant requirement.[11] Nonetheless, the reasoning in *Ortega* applies with equal force in the context of a vehicle search based on a suspicion that evidence of criminal activity will be found. In *Ortega*, the odor of marijuana could have resulted from a person possessing a non-criminal amount of marijuana—an amount that would not justify arrest—and therefore the odor alone could not provide probable cause for a search incident to arrest. 770 N.W.2d at 149 n.2. For the same reason, the odor of marijuana alone does not justify a vehicle search because non-criminal amounts of marijuana do not provide probable cause to believe that criminal amounts of marijuana will be found in a vehicle. *See Torgerson*, 995 N.W.2d at 171 n.9, 175 (discussing *Ortega*). In his dissent from the court of appeals opinion in this case, Judge Ross observed: "[I]t was clear by 2009 that binding appellate precedent held that the odor of marijuana alone does *not* establish probable cause for a warrantless search of a vehicle because the odor may be

---

[11] We have said that probable cause to arrest an individual (and thus search them incident to arrest) is distinct from the probable cause required to search a vehicle. *See, e.g.*, *Ortega*, 770 N.W.2d at 149 n.2 ("[A]lthough 'probable cause to arrest' satisfies the search-incident-to-arrest exception to the Fourth Amendment warrant requirement when an arrest is made, 'probable cause to search' does not necessarily trigger an exception to the warrant requirement or lead to the conclusion that the search was otherwise reasonable."); *In re Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn. 1997) ("[P]robable cause to search and probable cause to arrest are distinct. . . . Whereas probable cause to search requires police to have a reasonable belief that incriminating evidence is in a certain location, probable cause to arrest requires police to have a reasonable belief that a certain person has committed a crime." (citations omitted)); *see also Chambers v. Maroney*, 399 U.S. 42, 49 (1970) ("[T]he search of an auto[mobile based] on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest[.]").

16

evidence of only a noncriminal amount of marijuana." *Douglas*, 12 N.W.3d at 767 (Ross, J., dissenting). At the very least, even if the sentence in *Pierce* suggesting a bright-line rule that detecting odors of illicit substances alone provides probable cause to search a vehicle was an independent alternative holding, our decisions in *Burbach* and *Ortega* called into question whether the statement remained good law—if it ever was.

The dissent fears that relying on what it characterizes as the "nuances and distinctions" raised in *Burbach* and *Ortega* places too heavy a burden on police officers. As we discuss more fully in Part C, we appreciate the concern but conclude that the focus is misplaced. We also emphasize, however, that *Burbach* and *Ortega* are the law and not mere nuances that may be readily dismissed. Further, the State bears the burden to establish any exception to the warrant requirement. *Ture*, 632 N.W.2d at 627. And as we reiterated in *Torgerson*, we have long held that police officers must determine probable cause in each individual circumstance based on the *totality of the circumstances*. 995 N.W.2d at 173. The incentive and default for police officers and those who train them in close, uncertain, or doubtful circumstances should be to err on the side of staying within that constitutional perimeter.

The situation we faced in *Lindquist* was different. Our decision in *Lindquist* relied on *Shriner* and *Netland*, in which we had established a bright-line rule that the police conduct at issue (a warrantless search of a suspected intoxicated driver's blood) was permissible and, before the U.S. Supreme Court invalidated *Shriner* and *Netland*, we had never controverted that rule. *Lindquist*, 869 N.W.2d at 877–79. To apply a good-faith

17

exception to the exclusionary rule in this case would expand the exception beyond the narrow limitations we established in *Lindquist*.

C.

The State argues that we should expand our decision in *Lindquist* to include the circumstances here because suppressing the evidence found during the search of Douglas's vehicle would have no deterrent value. We disagree.

We have stated that the purposes of the exclusionary rule in Minnesota include deterring police misconduct and other unlawful government conduct, as well as preserving judicial integrity and providing a remedy for violations of the Minnesota Constitution. *See Malecha*, 3 N.W.3d at 575, 577 & n.4; *cf. Michigan v. Tucker*, 417 U.S. 433, 446–47 (1974) (stating the primary rationale for the federal exclusionary rule is to deter police misconduct). We also recognize that police work is difficult and the line between a constitutional and an unconstitutional search is not always clear. Nonetheless, the right to be free from unreasonable and warrantless government intrusion is one of the most fundamental protections our constitution guarantees to Minnesotans. We reiterate the longstanding constitutional rule that law enforcement should assess whether probable cause exists for a warrantless search after considering the totality of the circumstances in each case. *See Torgerson*, 995 N.W.2d at 173. We conclude that the rule we adopt today will serve to encourage those who train police officers to focus those officers on assessing the totality of the circumstances in each unique case rather than trying to suss out of our case law single, per se justifications for searches that may not otherwise be permissible under the totality of the circumstances.

18

D.

The State also points out that the court of appeals, in several nonprecedential decisions, has cited or quoted the dicta from *Pierce* that "the detection of odors alone, which trained police officers can identify as being illicit, constitutes probable cause to search automobiles for further evidence of crime." 347 N.W.2d at 833. In many of those cases, the court of appeals specifically identified circumstances beyond the odor of marijuana that supported the warrantless searches at issue.[12] We have identified only a handful of nonprecedential court of appeals decisions after our decisions in *Ortega* and *Burbach* upholding warrantless searches of vehicles where the smell of marijuana was the only basis used to justify searches—and most of those cases were decided after the 2019

---

[12] *See, e.g.*, *State v. Torgerson*, No. A22-0425, 2022 WL 6272042, at *2 (Minn. App. Oct. 10, 2022) ("We do not reach the issue of whether the odor of marijuana, alone, is enough to establish probable cause . . . ."); *State v. Waltz*, No. A21-0603, 2022 WL 829252, at *4 (Minn. App. Mar. 21, 2022) ("While we do not disagree with the state's summary of the law, we note that the factual circumstances here included more than an odor of marijuana."); *State v. Jackson*, No. A16-1456, 2017 WL 3222526, at *4 (Minn. App. July 31, 2017) ("As a threshold matter, we note the search was not based on the odor [of marijuana] alone . . . ."); *State v. Mattison*, No. A15-1423, 2016 WL 5345529, at *4 (Minn. App. Sep. 26, 2016) (officer smelled marijuana and observed vehicle occupants acting in a manner suggesting they were under the influence of a controlled substance); *State v. Clay*, No. A14-1567, 2015 WL 4523693, at *1 (Minn. App. June 29, 2015) (in addition to the smell of marijuana, officer observed an unlabeled prescription bottle in the car and noted the defendant "appeared nervous" after being asked if he had any marijuana); *State v. Dickenson*, No. A13-1516, 2014 WL 2807676, at *1 (Minn. App. June 23, 2014) (police dog alerted officers to the trunk of the vehicle); *State v. Carter*, No. A08-0625, 2009 WL 1118902, at *2–3 (Minn. App. Apr. 28, 2009) (in addition to the smell of marijuana, officer saw defendant taking actions consistent with the sale of narcotics, smoke coming from the window of the vehicle, and three cell phones and money in the defendant's lap); *In re Welfare of R.T.*, No. A08-0441, 2009 WL 67313, at *1 (Minn. App. Jan. 13, 2009) (officer received report that a group of males were possibly smoking marijuana in a parking lot and, upon arrival, observed a blunt in the center console of the car).

19

search in this case. *See State v. Browder*, No. A19-1908, 2020 WL 3172848, at *2 (Minn. App. June 15, 2020); *State v. Hunter*, No. A19-1429, 2020 WL 1983310, at *4 (Minn. App. Apr. 27, 2020); *State v. Skotte*, No. A19-0713, 2020 WL 996742, at *2–3 (Minn. App. Mar. 2, 2020); *State v. Kalberg*, No. A16-0566, 2017 WL 1210110, at *1–2 (Minn. App. Apr. 3, 2017).

Notably, the State does not claim that these nonprecedential decisions from the court of appeals are "binding appellate precedent." This is consistent with the clear language in the Rules of Civil Appellate Procedure: "Nonprecedential opinions . . . are not binding authority except as law of the case, res judicata or collateral estoppel . . . ." Minn. R. Civ. App. P. 136.01, subd. 1(c). We agree and hold that nonprecedential decisions are not "binding appellate precedent" for purposes of the *Lindquist* good-faith exception to the exclusionary rule.

Rather, the State asserts that these nonprecedential decisions are evidence of some level of consensus in the legal community (before we issued our decision in *Torgerson*) that the odor of marijuana alone could justify a vehicle search.[13] Although our review of

---

[13] The dissent makes a similar argument that the court of appeals' decisions to designate later related cases—most of which, like *Pierce*, did not consider the odor of marijuana as the sole circumstance in a probable cause determination—as nonprecedential shows that the court of appeals considered *Pierce* to be a "binding and settled rule of law." First, we observe that this was not a unanimously held belief among members of the court of appeals. *See Douglas*, 12 N.W.3d at 767 (Ross, J., dissenting). Further, as noted, most court of appeals decisions did *not* rely solely on the principle that the odor of marijuana alone is sufficient to provide probable cause to search a vehicle. *Supra* note 11. Finally, we cannot know—here or in any case—why the court of appeals chooses a certain designation for its cases. Although there are factors each court of appeals panel may consider in designating the form of an opinion, *see* Minn. R. Civ. App. P. 136.01,

20

those cases does not suggest as strong a consensus as the State argues, we also do not suggest that individual police officers—including the officer in this case—had no basis for believing that the smell of marijuana created a bright-line exception to the general rule that courts assess the propriety of a vehicle search under the totality of the circumstances. Indeed, if anything, we take full responsibility for failing to step in earlier than our decision in *Torgerson* to clearly state that it is not the law in Minnesota that the odor of marijuana alone provides probable cause to support a warrantless search of a vehicle.

But consensus in the legal community about what a decision means is not the standard for determining whether the *Lindquist* good-faith exception to the exclusionary rule applies. Instead, the *Lindquist* exception is limited to the narrow contours we identified in that case: It applies only when law enforcement acts in objectively reasonable reliance on subsequently reversed binding appellate precedent which articulates a rule that specifically authorized the officer's conduct under the circumstances addressed in the precedential case and the rule has not been unsettled by subsequent decisions. 869 N.W.2d at 876–77. The *Lindquist* rule does not apply in this case, and we decline to expand the narrow good-faith exception we adopted in *Lindquist*.

---

subd. 1(b), there is no statement published with each opinion explaining why the opinion is either precedential or nonprecedential. The court of appeals' decision to designate a case as nonprecedential does not transform a non-binding principle of law into a binding principle of law.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

PROCACCINI, Justice (dissenting).

I respectfully dissent. The good-faith exception to the exclusionary rule applies "when law enforcement acts in objectively reasonable reliance on binding appellate precedent." *State v. Lindquist*, 869 N.W.2d 863, 876 (Minn. 2015). In *State v. Pierce*, the court of appeals plainly stated in a published and precedential decision that "the detection of odors alone, which trained police officers can identify as being illicit, constitutes probable cause to search automobiles for further evidence of crime." 347 N.W.2d 829, 833 (Minn. App. 1984). That rule of law was a holding (not dicta), which remained good law for nearly 40 years until *State v. Torgerson*, 995 N.W.2d 164 (Minn. 2023). Because I would conclude that the police officer in this case was objectively reasonable in adhering to the rule of law stated in *Pierce*, I would apply the good-faith exception to the exclusionary rule recognized in *Lindquist* and affirm the court of appeals.

A.

To start, I am not convinced by Douglas's argument that the rule of law stated in *Pierce* is "dicta." Instead, I would conclude that *Pierce* held that "the detection of odors alone, which trained police officers can identify as being illicit, constitutes probable cause to search automobiles for further evidence of crime." 347 N.W.2d at 833.

"Statements and conclusions based on the facts and legal issues before the court . . . are not dicta." *Ries v. State*, 920 N.W.2d 620, 635 n.8 (Minn. 2018); *accord State ex rel. Foster v. Naftalin*, 74 N.W.2d 249, 266 (Minn. 1956); *Olson v. Lesch*, 943 N.W.2d 648, 657 n.6 (Minn. 2020). The paragraph in *Pierce* containing the disputed language sets forth

a rule of law and applies it to the facts presented. 347 N.W.2d at 833. The issue of law in *Pierce* was whether an officer had probable cause to search an automobile. *Id.* And one of the facts presented was that the officer smelled contraband. *Id.* at 831. The language at issue was based on a fact (the smell of contraband) and a legal issue (whether the officer had probable cause), both presented in the case. Because the disputed language in *Pierce*, 347 N.W.2d at 833, was "based on the facts and legal issues before the court," it was not dicta. *Ries*, 920 N.W.2d at 635 n.8; *see also Naftalin*, 74 N.W.2d at 266 (explaining that when "two or more issues are before the court and are argued by counsel, and the court places its decision on both even though a decision on one issue might have been sufficient to dispose of the case, the decision is equally binding as to both issues"). The language in *Pierce* amounted to an alternative holding, as the court seems to acknowledge, and not dicta. It was therefore binding appellate precedent when it was issued.

But even if the rule of law stated in *Pierce* were dicta, it would be the kind of dicta to which we afford much greater weight. We have recognized two distinct kinds of dicta: "obiter dicta" and "judicial dicta." *State v. Rainer*, 103 N.W.2d 389, 396 (Minn. 1960). An obiter dictum is, literally, "something said in passing." *Dictum*, *Black's Law Dictionary* (12th ed. 2024). Statements labeled "obiter dicta" are "expressions in a court's opinion which go beyond the facts before the court." *Naftalin*, 74 N.W.2d at 266. Statements are "judicial dicta" (and not obiter dicta) if "what was said bears directly upon the theory upon which the decision proceeded and upon an issue of law treated as decisive." *Rainer*, 103 N.W.2d at 396.

We afford different weight to obiter dicta and judicial dicta. *Id.* Obiter dicta are "not binding in subsequent cases." *Naftalin*, 74 N.W.2d at 266. On the other hand, because a judicial dictum is not merely a statement made in passing, but instead is an "expression emanating from the judicial conscience and the responsibilities that go with it," it is "entitled to much greater weight than [a] mere obiter dictum and should not be lightly disregarded." *Rainer*, 103 N.W.2d at 396. We are not alone in drawing this distinction and affording greater weight to judicial dicta. *See* Charles W. Tyler, *The Adjudicative Model of Precedent*, 87 U. Chi. L. Rev. 1551, 1566 & n.84 (2020) (noting that Minnesota is among several states, including Arizona, Illinois, and Maryland, which make similar distinctions and treat judicial dicta as "authoritative").

If we were to consider the language in *Pierce* to be dicta, it would be judicial dicta and not obiter dicta. As discussed above, the court's statement in *Pierce* that the odor of contraband alone was sufficient to authorize an automobile search did not "go beyond the facts before the court." *Naftalin*, 74 N.W.2d at 266. To the contrary, that language bore directly on the facts presented (namely, the fact that the officer smelled contraband) and the key issue in the case (whether the search was supported by probable cause). *Pierce*, 347 N.W.2d at 833. That the court acknowledged additional factual bases for probable cause in *Pierce* does not mean that its statement regarding the legal standard did not "bear[] directly upon the theory upon which the decision proceeded . . . ." *Rainer*, 103 N.W.2d at 396. Because the rule of law in *Pierce* is—at a minimum—judicial dicta, our case law instructs that courts should give it "much greater weight," *id.*, and we should not treat it as

something other than binding appellate precedent for the purpose of applying the good-faith exception under *Lindquist*.

B.

Of course, to say that the rule of law in *Pierce* was binding appellate precedent when it was issued in 1984 is not to say that it remained so until *Torgerson*. But I am unconvinced that intervening cases overruled *Pierce*. The court of appeals itself treated the language in *Pierce* as a valid rule of law until we issued our decision in *Torgerson*. Since 1984, when the court of appeals decided *Pierce* in a published and precedential opinion, the court of appeals cited that opinion no fewer than 18 times for the rule of law that the odor of marijuana alone was a sufficient basis for a police officer to search an automobile.[1] *See Rainer*, 103 N.W.2d at 396 (explaining that dicta can "be[] strengthened and acquire[] additional weight by reason of . . . recognition and repetition").

---

[1]     *State v. Waltz*, No. A21-0603, 2022 WL 829252, at *4 (Minn. App. Mar. 21, 2022) ("[U]nder current Minnesota law, the smell of marijuana provides probable cause for a vehicle search."); *State v. Browder*, No. A19-1908, 2020 WL 3172848, at *2 (Minn. App. June 15, 2020) ("Odor, including that of marijuana, has been held to supply sufficient probable cause to search a vehicle."); *State v. Hunter*, No. A19-1429, 2020 WL 1983310, at *3–4 (Minn. App. Apr. 27, 2020) (concluding that "the district court should have concluded that the Belle Plaine officers had probable cause to search Hunter's car" based on "the odor of marijuana coming from Hunter's car"); *State v. Skotte*, No. A19-0713, 2020 WL 996742, at *2–3 (Minn. App. Mar. 2, 2020) ("The smell of burnt marijuana is sufficient probable cause to justify a vehicle search."); *State v. Beaulieu*, No. A18-0203, 2018 WL 6442115, at *2–3 (Minn. App. Dec. 10, 2018) ("There is published caselaw stating that the odor of marijuana coming from a vehicle establishes probable cause to search the vehicle."); *State v. Boettcher*, No. A17-0043, 2018 WL 414120, at *2 (Minn. App. Jan. 16, 2018) ("The smell of marijuana can provide probable cause for a vehicle search."); *State v. Jackson*, No. A16-1456, 2017 WL 3222526, at *4 (Minn. App. July 31, 2017) ("[T]here is published caselaw from [the court of appeals] stating that the odor of marijuana emanating from a vehicle establishes probable cause to search the vehicle.");

It is true that the court of appeals designated each of these later opinions as unpublished or nonprecedential.[2] But the decision to designate those cases that way shows that the court of appeals considered itself to be restating a binding and settled rule of law—rather than establishing a new one—each time it pronounced that the smell of marijuana alone was sufficient to authorize an automobile search. *See* Minn. R. Civ. App. P. 136.01,

---

*State v. Kalberg*, No. A16-0566, 2017 WL 1210110, at *1 (Minn. App. Apr. 3, 2017) ("We have long observed that the odor of marijuana provides an officer with probable cause to search a vehicle."); *State v. Mattison*, No. A15-1423, 2016 WL 5345529, at *3 (Minn. App. Sep. 26, 2016) ("The smell of marijuana provides an officer with probable cause to search a vehicle . . . ."); *State v. Clay*, No. A14-1567, 2015 WL 4523693, at *3 (Minn. App. June 29, 2015) ("The odor of marijuana provides an officer with probable cause to search a vehicle . . . ."); *State v. Dickenson*, No. A13-1516, 2014 WL 2807676, at *3 (Minn. App. June 23, 2014) ("We conclude that the district court did not err by holding that the smell of burnt marijuana from Dickenson's vehicle established probable cause to conduct a warrantless search of the vehicle . . . ."); *State v. Carter*, No. A08-0625, 2009 WL 1118902, at *2 (Minn. App. Apr. 28, 2009) ("[T]he odor of burned marijuana inside a stopped motor vehicle provides probable cause to search the vehicle and its occupants."); *State v. Allinder*, No. A08-0068, 2009 WL 304879, at *3 (Minn. App. Feb. 10, 2009) ("The detection of illicit odors alone by trained police officers constitutes probable cause to search automobiles for further evidence of crime."); *In re Welfare of R.T.*, No. A08-0441, 2009 WL 67313, at *2–3 (Minn. App. Jan. 13, 2009) ("[D]etection of an odor of marijuana would establish probable cause to search . . . ."); *State v. Torres*, No. C5-02-1704, 2003 WL 1908166, at *3 (Minn. App. Apr. 22, 2003) (concluding that "the officer had probable cause to search the vehicle" based on "the fact that the officer smelled marijuana"); *State v. Moore*, No. C9-00-1894, 2001 WL 1083717, at *2 (Minn. App. Sep. 18, 2001) (concluding that the officer "had probable cause to search the car" based on the fact that the officer "smelled the odor of marijuana"); *State v. LaBore*, No. C2-00-1929, 2001 WL 682857, at *2 (Minn. App. June 19, 2001) ("Smelling burnt marijuana provides probable cause for a search of a car."); *State v. Kattaria*, No. C6-97-2358, 1998 WL 481899, at *3 (Minn. App. Aug. 18, 1998) ("[T]he odor of marijuana in appellant's car constituted probable cause for police to search his automobile for further evidence of a crime.").

[2]      I do not quibble with the conclusion that an unpublished or nonprecedential case of the court of appeals on its own is insufficient to constitute binding appellate precedent under *Lindquist*.

subd. 1(b) (setting out considerations for designating an opinion as precedential, including whether the opinion "establishes a new principle or rule of law or clarifies existing caselaw" or rather "applies settled principles or controlling precedent"); *see also State v. Beaulieu*, No. A18-0203, 2018 WL 6442115, at *2 (Minn. App. Dec. 10, 2018) ("There is *published caselaw* stating that the odor of marijuana coming from a vehicle establishes probable cause to search the vehicle." (emphasis added)). Of course, we are not bound by the way that the court of appeals views its own opinions, but expecting police officers (or those who train them) to split such hairs is a tall order.

Moreover, although our decisions in *State v. Burbach*, 706 N.W.2d 484 (Minn. 2005), and *State v. Ortega*, 770 N.W.2d 145 (Minn. 2009), may have cast some doubt as to the relevant rules of law, they did not overrule *Pierce* or render its holding something other than binding appellate precedent. As the court acknowledges, we did not clearly state that the rule in *Pierce* was not the law in Minnesota until *Torgerson*. *See Torgerson*, 995 N.W.2d at 166.

*Burbach* provided clarity as to whether the smell of *alcohol* could serve as the sole basis for a search,[3] but the *Pierce* rule was not cabined to the smell of alcohol. By its own terms, *Pierce* swept more broadly to "odors" that "trained police officers can identify as being illicit." 347 N.W.2d at 833. Indeed, *Pierce* relied on our decisions in *City of St. Paul v. Moody*, 244 N.W.2d 43 (Minn. 1976), and *State v. Wicklund*, 205 N.W.2d 509 (Minn. 1973)—neither of which were about alcohol. *See Pierce*, 347 N.W.2d at 833.

---

[3]     *See Burbach*, 706 N.W.2d at 489 (rejecting the State's argument for "a bright-line rule that the odor of *alcohol* always justifies a vehicle search" (emphasis added)).

*Moody* involved a police officer who stopped a car and smelled "a strong odor of paint fumes" from inside the car. 244 N.W.2d at 44. And *Wicklund* was about the smell of marijuana. 205 N.W.2d at 511. We did not expressly clarify the limits of those decisions until *Torgerson*. 995 N.W.2d at 171–72. And before *Torgerson*, our case law generally applied *Moody* and *Wicklund* as the court of appeals did in *Pierce*.[4] Accordingly, although *Burbach* did clarify that the odor of alcohol does not by itself justify a vehicle search, we did not abrogate the general rule stated in *Pierce* that there are some odors that, by themselves, provide probable cause to search a car. We simply held that, without more, alcohol was not one of those odors. *Burbach*, 706 N.W.2d at 489.

*Ortega* provides a similarly weak basis for concluding that *Pierce* was abrogated before *Torgerson*. *Ortega* involved a search incident to arrest, not a search of a vehicle. 770 N.W.2d at 148–50. As the court acknowledges, the vehicle and search incident to arrest exceptions to the warrant requirement are separate doctrines, with distinct standards and case law. *See Torgerson*, 995 N.W.2d at 171 n.9. The closest *Ortega* came to addressing the issues presented here was in a footnote, where we described our holding in *Wicklund*. *Ortega*, 770 N.W.2d at 149 n.2. We noted that, at the time *Wicklund* was

---

[4]    *See, e.g.*, *State v. Schultz*, 271 N.W.2d 836, 837 (Minn. 1978) (citing *Wicklund* for the proposition that "the odor of marijuana" justified a "warrantless search of the passenger compartment for marijuana pursuant to the so-called motor vehicle exception to the warrant requirement"); *State v. Hodgman*, 257 N.W.2d 313, 315 (Minn. 1977) (citing *Wicklund* for the proposition that the odor of marijuana gave the officer "probable cause to arrest defendant *and conduct a full search of both* defendant and the car" (emphasis added)); *State v. Veigel*, 304 N.W.2d 900, 901–02 (Minn. 1981) (citing *Wicklund* and *Moody* for the proposition that discovery of "a pipe which smelled of burned marijuana" gave rise to "probable cause to believe that the vehicle contained controlled substances and that therefore a warrantless search was valid under the motor-vehicle exception").

decided, possession of any amount of marijuana was criminal. *Id.* Although we reasoned that the marijuana smell in *Wicklund* justified the search because it "provided the officer probable cause to believe Wicklund possessed a *criminal* amount of marijuana," we did not overrule *Wicklund* or *Pierce*, nor did we otherwise state that odor of an illicit substance alone could never provide probable cause for a vehicle search. *See id.*

And although we may have intended to clarify the law, it is unreasonable to expect that police officers appreciated our intent when the courts did not. *See Beaulieu*, 2018 WL 6442115, at *3 ("*Ortega* does not stand for the proposition that a police officer lacks probable cause to search a vehicle based on the smell of marijuana alone."); *State v. Levy*, No. A13-2358, 2014 WL 4176082, at *2–3 (Minn. App. Aug. 25, 2014) (stating that "[c]aselaw does not support applying the caution noted in *Ortega* to a search conducted under the automobile exception to the warrant requirement" and concluding that "probable cause to search for marijuana existed based on the odor of burnt marijuana coming from the car"); *State v. Dickenson*, No. A13-1516, 2014 WL 2807676, at *3 (Minn. App. June 23, 2014) (same).

At the end of the day, relying on these nuances and distinctions places a heavy burden on police officers and misses what seems to be a critical point: For nearly four decades, the court of appeals, believing *itself* to be bound by *Pierce*, stated with mantralike consistency the rule of law authorizing police officers to search an automobile upon smelling marijuana. The court of appeals stated so unanimously in every case,[5] it stated so

---

[5]    *See supra* note 1.

before and after this court decided *Burbach* and *Ortega*,[6] and it stated so in cases where the challenged searches were premised solely on a whiff of marijuana.[7]  The decision to clarify the law in *Torgerson*, 995 N.W.2d at 171–73, did not erase the four decades of contradictory court of appeals precedent that came before it.[8]

*Lindquist* stands for the unremarkable propositions that police officers should be able to rely on appellate decisions and that their work "should not be rejected as a result of appellate judge error."  869 N.W.2d at 869.  Police officers "are not endowed with omniscience."  *City of St. Paul v. Vaughn*, 237 N.W.2d 365, 368 (Minn. 1975).  They should be able to rely on the court of appeals when it states a rule of law, and their work

---

[6]    *See supra* note 1 (listing eighteen total cases: four cases decided before *Burbach* and *Ortega*; three cases decided after *Burbach* but before *Ortega*; seven cases decided after *Burbach* and *Ortega* but before police searched Douglas's vehicle; and four cases decided after the search but before *Torgerson*).

[7]    *See Browder*, 2020 WL 3172848, at *2; *Hunter*, 2020 WL 1983310, at *4*; *Kalberg*, 2017 WL 1210110, at *1–2; *Kattaria*, 1998 WL 481899, at *3.

[8]    To be sure, we deny petitions for further review for all sorts of reasons, and "our decisions to deny further review . . . do not constitute an endorsement of the reasoning of the court of appeals or the result reached in those cases."  *Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.*, 702 N.W.2d 237, 245 (Minn. 2005).  But it is worth noting that we had numerous opportunities to address this issue and clarify the law before *Torgerson*.  *See Skotte*, 2020 WL 996742, at *2, *rev. denied* (Minn. May 19, 2020); *Beaulieu*, 2018 WL 6442115, at *3, *rev. denied* (Minn. Feb. 19, 2019); *Boettcher*, 2018 WL 414120, at *2, *rev. denied* (Minn. Mar. 28, 2018); *Jackson*, 2017 WL 3222526, at *4, *rev. denied* (Minn. Oct. 17, 2017); *Kalberg*, 2017 WL 1210110, at *1, *rev. denied* (Minn. June 20, 2017); *Mattison*, 2016 WL 5345529, at *3, *rev. denied* (Minn. Dec. 27, 2016); *Carter*, 2009 WL 1118902, at *2, *rev. denied* (Minn. June 30, 2009); *Moore*, 2001 WL 1083717, at *2, *rev. denied* (Minn. Nov. 26, 2001); *LaBore*, 2001 WL 682857, at *2, *rev. denied* (Minn. Aug. 15, 2001); *Kattaria*, 1998 WL 481899, at *3, *rev. denied* (Minn. Oct. 20, 1998).

should not be rejected if they fail to parse case law with a more discerning eye than the courts themselves.

*       *       *

Because the rule of law stated in *Pierce* was binding appellate precedent and remained so until *Torgerson*, I would conclude that the police officer who conducted the search here acted in objectively reasonable reliance on that precedent.  I would therefore apply the good-faith exception recognized in *Lindquist* and affirm the decision of the court of appeals.

For these reasons, I respectfully dissent.


MOORE, III, Justice (dissenting).

I join in the dissent of Justice Procaccini.